

NUMBER 13-09-00594-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**DONALD METOYER,**                                     **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                     **Appellee.**

---

### On appeal from the 319th District Court
### of Nueces County, Texas.

---

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Benavides
### Memorandum Opinion by Justice Benavides

Appellant, Donald Metoyer, pleaded guilty to one count of possession of a firearm by a felon, a third-degree felony; one count of theft of a firearm, a state jail felony; and one count of theft, a state jail felony. *See* TEX. PENAL CODE ANN. §§ 46.04, 31.03 (West 2010 & Supp. 2010). He was sentenced by the court to three years' confinement in the

Texas Department of Criminal Justice—Institutional Division for the charge of possession of a firearm by a felon and nine months' confinement in the Texas Department of Criminal Justice—State Jail Division for the two theft counts combined, with the sentences ordered to run consecutively. In two issues, Metoyer contends that the trial court erred in failing to grant his motion to suppress because: (1) he was illegally detained by police; and (2) his consent to search his car was tainted by the illegal detention. We affirm.

## I. BACKGROUND

Before entering his guilty plea in this case, Metoyer sought to suppress the evidence implicating him in all three charged offenses. At a hearing on the motion to suppress, the State called Officer Roger Parker of the Corpus Christi Police Department who testified concerning the events leading up to Metoyer's arrest. By Officer Parker's account, on April 27, 2009, the police received an anonymous tip through the Crime Stoppers "Save Our Streets" program that there was a stolen gun and a stolen laptop in a white Ford Mustang that belonged to Metoyer and that was parked in an apartment complex in Corpus Christi. Officer Parker testified that when he received the tip, he was already in the area "working a whole separate tip," and because he was not sure how many white Mustangs would be in the complex, he called additional units to help him locate the vehicle in the complex.

After Officer Parker and the other officers drove through the entire complex, they had found only one white Mustang. Officer Parker testified that his intention was to "get a license plate and see if maybe [Metoyer was] living there and [he] could talk to him at his front door the next day or something like that." Officer Parker testified that when he

2

returned to drive by the Mustang for a second time, however, all of the doors and trunk of the car were open, and Metoyer was standing on the passenger side of the vehicle loading bags into the trunk of the car. Officer Parker testified that at that time, he was concerned that Metoyer may have been stealing from other cars in the parking lot because he was "walking in between vehicles, back and forth" and loading several bags into the Mustang. Officer Parker testified:

> That's what kind of alerted me. Regardless [of] whether it was from the information of the tip or not[,] it was the activities that he was doing before, that's why I actually stopped, to see exactly what he was loading up. . . . [T]hat he was loading up just unknown bags into the vehicle at 11 o'clock at night.

Officer Parker notified the other officers on the scene that he was going to make contact, and with his hand on his weapon, he approached Metoyer, displayed his badge, and identified himself as a police officer. According to Officer Parker's testimony, it was then that he "immediately noticed in plain view inside the trunk the gun case." Officer Parker asked Metoyer what he was loading into the vehicle to which Metoyer replied that he was loading phonebooks in order to deliver them around the apartment complex. Officer Parker asked Metoyer if he would consent to a search of his trunk, to which Metoyer agreed. At that time, Officer Parker could "plainly see the gun case better, and [he] also saw lap-top [sic] computers . . . in there." Officer Parker's testimony additionally indicated that he saw several GPS systems in the trunk of Metoyer's vehicle. Officer Parker testified that after asking for additional consent to search the front of the vehicle, Metoyer simply told him that "the gun [was] in the front of the vehicle." Before searching the front of the vehicle, Officer Parker walked around the car and noted that he "could see the handle of the gun sticking out from underneath the front seat." He

3

testified that the gun was in "plain view." When asked where he obtained the gun and the laptops, Metoyer told the officer that he found them in or near a dumpster in the complex. With the gun, however, Officer Parker found a registration receipt indicating the owner of the gun, and when that name was run through the police system, Officer Parker determined that the owner had reported a burglary in which the gun and a laptop had been stolen.

In his motion to suppress, Metoyer argued that his Fourth Amendment rights were violated during his detention and Officer Parker's search of his vehicle. After hearing the foregoing testimony and arguments from counsel, the trial court denied the motion to suppress evidence but did not issue any findings of fact or conclusions of law. Metoyer then entered into a plea agreement with the State in which he pled guilty subject to the condition that he be permitted to appeal the denial of his motion to suppress. This appeal followed.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

Our review of a trial court's ruling on a pretrial motion to suppress evidence is well established law:

> The appellate courts, including this Court, should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. The appellate court should afford the same amount of deference to trial courts' rulings on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. The appellate courts may review de novo "mixed questions of law and fact" not falling within this category.

*State v. Elias*, No. PD-0735-10, 2011 Tex. Crim. App. LEXIS 448 at **14-15 (Tex. Crim. App. April 6, 2011) (citing *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000);

4

*Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).

Additionally, in order to challenge a search or seizure under the Fourth Amendment, a defendant must prove that he had a legitimate possessory interest or expectation of privacy in the vehicle that he claims was illegally searched, and "because standing is an element of a Fourth Amendment claim, the State may raise the issue of standing for the first time on appeal." *See Kothe v. State*, 152 S.W.3d 54, 60 (Tex. Crim. App. 2004); *Hughes v. State*, 24 S.W.3d 833, 838 (Tex. Crim. App. 2000). We review the defendant's standing de novo. *Kothe*, 152 S.W.3d at 59.

Three distinct categories exist to describe the interactions between police officers and citizens: (1) encounters, (2) investigative detentions, and (3) arrests.

> In determining which category an interaction falls into, courts look at the totality of the circumstances. An encounter is a consensual interaction which the citizen is free to terminate at any time. Unlike an investigative detention and an arrest, an encounter is not considered a seizure that would trigger Fourth Amendment protection. An encounter takes place when an officer approaches a citizen in a public place to ask questions, and the citizen is willing to listen and voluntarily answers. On the other hand, an investigative detention occurs when a person yields to the police officer's show of authority under a reasonable belief that he is not free to leave. When the court is conducting its determination of whether the interaction constituted an encounter or a detention, the court focuses on whether the officer conveyed a message that compliance with the officer's request was required. The question is whether a reasonable person in the citizen's position would have felt free to decline the officer's requests or otherwise terminate the encounter.

*Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010) (internal citations omitted). The type of police action that exemplifies the projection of authority required to raise the interaction with a citizen to the level of detention can include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance

5

with the officer's request might be compelled."  *U.S. v. Mendenhall*, 446 U.S. 544, 554, (1980).

The United States Supreme Court has determined that "[u]nder the Fourth Amendment, a warrantless detention of a suspect that amounts to less than a full-blown custodial arrest must be justified at least by a reasonable suspicion."  *Id.* (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989) ("[P]olice can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause."); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005)).  "A police officer has reasonable suspicion to detain a person if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity."  *Id.* (citing *Sokolow*, 490 U.S. at 7; *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010)); *see also Terry v. Ohio*, 392 U.S. 1, 21 (1968) (noting that "the police officer must be able to point to specific and articulable facts which, if taken together with rational inferences from those facts, reasonably warrant" an investigative detention).  In determining whether reasonable suspicion exists, a court must look for any objective justification for the detention and must disregard the actual subjective intent or motive of the detaining officer.  *See Terry*, 392 U.S. at 21-22 ("[I]t is imperative that the facts be judged against an objective standard:  would the facts available to the officer at the moment of the seizure . . . warrant a man of reasonable caution in the belief that the action taken was appropriate.") (internal quotation marks omitted); *see also Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007) (providing that, in considering the legitimacy of a

detention, "[t]he subjective intent or motivations of law enforcement officials is not taken into account").

### III. DISCUSSION

#### A. Standing

The State contends at the outset that Metoyer did not establish his standing to question the detention or the search. We disagree. "Although we defer to the trial court's factual findings and view them in the light most favorable to the prevailing party, we review the legal issue of standing de novo." *Kothe*, 152 S.W.3d at 59. In this case, the State does not contend that Metoyer did not in fact have a possessory interest in the vehicle, only that he did not meet his burden of showing his possessory interest as a matter of law. Although Metoyer presented no witnesses at the hearing on the motion to suppress, Officer Parker's testimony was sufficient to establish Metoyer's standing to complain of the detention and the search. Officer Parker testified that he received a tip that a white Mustang "belonging to Metoyer" contained stolen property, and additionally, he testified that he eventually ran the license plates on the Mustang and found that Metoyer owned the vehicle. Without rebutting evidence from the State, this is sufficient evidence to establish Metoyer's possessory right to the vehicle and, therefore, to establish his standing to question the legality of the search. *See Hughes v. State*, 24 S.W.3d at 838.

Regardless, the fact that Metoyer is challenging the detention that occurred prior to the search is enough to transcend any question of his expectation of privacy in the vehicle because Metoyer alleges that it was the improper detention that led to the discovery of the evidence that he now seeks to suppress. *See id.* at 60-61 (holding

7

that, although a defendant has no "standing to complain about any search and seizure conducted against [a third party], that issue is transcended by the illegal detention that was found to have occurred earlier" and affirming the suppression of evidence found in a place where the defendant clearly had no expectation of privacy); *see also State v. Brady*, 763 S.W.2d 38, 42 (Tex. App.–Corpus Christi 1988, no pet.) (addressing the issue of defendant's standing to challenge search although not raised by either State or defendant in trial or appellate court).   Accordingly, we hold that Metoyer does have standing to seek the suppression of the evidence collected in his vehicle.

## B.   Encounter vs. Detention

The State additionally contends that the officers could not have illegally detained Metoyer because he was not subject to a detention at all, but merely a police encounter. Again, we disagree.   The trial court did not enter findings of fact regarding this interaction, and therefore, we review it as a mixed question of fact and law subject to de novo review.   *See Elias*, 2011 Tex. Crim. App. LEXIS 448, at *15.   In this case, Officer Parker testified that he displayed his badge to Metoyer and approached him with his hand on his weapon.   Additionally, the testimony indicated that the other officers "pulled up and walked up behind [Officer Parker] while [he] started talking to [Metoyer]."   When considering the totality of the circumstances, we conclude that a reasonable person in Metoyer's position would not have felt free to decline the officer's requests or otherwise terminate the encounter.   *See Crain*, 315 S.W.3d at 49; *Mendenhall*, 446 U.S. at 554 (noting, specifically, that "the threatening presence of several officers" and "the display of a weapon by an officer" can cause a mere encounter to effectively become a detention). Metoyer was indeed detained by the police officers from the moment the interaction

8

began, and therefore, the legality of the detention is subject to Fourth Amendment analysis. *See Crain*, 315 S.W.3d at 49.

## C. Reasonable Suspicion

Both of Metoyer's issues on appeal are dependent on a holding by this Court that his detention was improper under the Fourth Amendment—or more specifically, that the officers who questioned him and obtained his consent to search his vehicle did not have reasonable suspicion for such a detention.

In his first issue, Metoyer argues that there were no facts available to the officer at the time of the detention to corroborate the anonymous tip that he received through the Crime Stoppers program and that an anonymous tip cannot alone be the basis of an investigative detention. *See State v. Griffey*, 241 S.W.3d 700, 704 (Tex. App.–Austin 2007, pet. ref'd). It is true that an anonymous tip will rarely establish the required level of suspicion necessary to justify an investigative detention, but when sufficiently corroborated, it may be relied upon. *See Alabama v. White*, 496 U.S. 325, 330 (1990) (holding that an anonymous tip was sufficient to establish reasonable suspicion when the tip gave identifying characteristics of the vehicle, gave its location, and indicated the route it would take when leaving that location). Although there was some corroboration in this case—including observations that there was in fact a white Mustang parked at the given address and that a gun case was viewed in plain sight in the trunk of Metoyer's vehicle—a completely independent basis for reasonable suspicion existed due to Metoyer's "shuffling back and forth" between cars and, as it appeared to Officer Parker, removing property from one vehicle and putting it into the trunk of the white Mustang. This observation, along with the time of day and the number of recent thefts in the area,

9

was enough to justify an investigative detention in order to ensure that Metoyer was not, at that very moment, burglarizing another vehicle. *Crain*, 315 S.W.3d at 48 (noting that we will "view the evidence in the light most favorable to the trial court's ruling" and "sustain the trial court's decision if it concludes that the decision is correct on any theory of law applicable to the case"). Officer Parker noted, "At that time I was more concerned about what he was doing coming from the other vehicles and what property he was bringing from the other vehicles at 11 o'clock at night. And at that time I was detaining him for the purpose of that investigation." These clearly articulable facts, when combined with rational inferences and the anonymous tip implicating a white Mustang at that exact address, would lead an officer to conclude that Metoyer actually was, had been, or soon would be engaged in criminal activity. *See id.* at 50. Though the property being loaded was not in fact stolen or being removed from another vehicle at all, we must look only at the facts available to the officer at the time of the detention. *Id.* (citing *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997)). Based on an objective standard and the totality of the circumstances in this case, we conclude that reasonable suspicion existed for the officers to detain Metoyer. *See Terry*, 392 U.S. at 21-22. Therefore, we overrule Metoyer's first issue.

### D. Consent

By his second issue, Metoyer contends that the consent he gave to Officer Parker to search both his trunk and the passenger compartment of his vehicle was tainted by his illegal detention. Having already held that reasonable suspicion existed for the investigative detention in this case, the detention was not illegal and, therefore, could not have tainted any consent given by Metoyer. *See Brick v. State*, 738 S.W.2d 676, 681

(Tex. Crim. App. 1987) (listing the factors to show the voluntariness of consent, but noting that these apply only to "the detention, *if unlawful*" (emphasis added)); *see also Brown v. Illinois*, 422 U.S. 590, 603-04 (1975) (same). Accordingly, Metoyer's second issue is overruled.

## IV. CONCLUSION

Having overruled both of Metoyer's issues on appeal, we affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P.47.2 (b).

Delivered and filed the
2nd day of June, 2011.