**Affirmed and Memorandum Opinion filed January 24, 2012.**



**In The**

# Fourteenth Court of Appeals

---

## NO. 14-10-01004-CR

---

**ROBERTO VILLANUEVA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 08CR3051**

---

## M E M O R A N D U M   O P I N I O N

The jury found appellant Roberto Villanueva guilty of murder and assessed punishment at 50 years' confinement in the Texas Department of Criminal Justice. Appellant appeals his felony conviction, claiming the trial court erred in denying his motion to suppress a videotaped confession and in denying his requested jury instruction regarding the law of parties.  We affirm.

## Testimony on Motion to Suppress

Appellant was an informant for law enforcement in Dickinson, Texas. In October 2008, a detective who worked closely with appellant received multiple phone calls from appellant[1] inquiring about the complainant, Albert Lacy, whose murder was unsolved at that time. Appellant called the detective to obtain contact information for Lacy's family members, called several times to check the status of his request, and called to ask where Lacy was buried. Appellant sounded more emotionally upset as the day progressed. Finally the detective asked if appellant had any involvement in Lacy's murder. Appellant responded, "Major."[2] Appellant agreed to meet the detective at the 24-Step Club, a counseling and support center for substance abusers located in Dickinson.

The detective then spoke with Kim Gray, a friend of appellant, and asked her to meet appellant at the 24-Step Club. Gray informed the detective that she was afraid to meet appellant because he had purchased a handgun[3] and had been threatening suicide. She also told the detective that appellant had confessed to her he was involved in Lacy's murder.[4] She agreed, however, to meet appellant at the club. The detective and two other officers went to the club and surveyed the parking lot. The detective called appellant, who sounded as if he had been crying. After meeting with Gray, appellant agreed to go outside and meet the officers.

Gray testified that when she and appellant walked outside, approximately 15 officers approached them, handcuffed appellant, and placed him in an unmarked police truck. The officers took appellant to the Dickinson Police Department, put him into an

---

[1] Appellant and the detective knew each other for approximately ten years prior to the suppression hearing.

[2] Appellant disputed that he sounded emotional on the phone or admitted to any involvement in Lacy's murder.

[3] Gray denied telling the detective that appellant had acquired a gun: she said that appellant "was talking about getting one."

[4] Gray testified at the hearing that appellant told her he met Lacy at Lacy's house concerning a construction project. Appellant intended to rob Lacy, but "things got out of hand and [appellant] killed [Lacy]." Appellant denied telling Gray that he murdered Lacy.

interrogation room, and read him his *Miranda* rights. Appellant initialed and signed a waiver-of-rights form, and then gave a videotaped confession over two hours. Appellant admitted that this confession was given "freely and knowingly and voluntarily." The detective, two other officers, and Gray intermittently entered and left the room during that time. Appellant confessed to striking Lacy. Appellant was not booked until after the interview—he previously had been patted down, but no property was taken from him before booking.

The detective testified that he had wanted to interview appellant because of appellant's many phone calls and statement that his involvement in Lacy's murder was "major." The detective further testified appellant's interview was voluntary but the detective did not have a warrant or probable cause to arrest appellant when he was taken to the station.

Appellant said the detective contacted him when appellant was at the 24-Step Club in a meeting, asked where appellant was, and said he would "pop his head in the door" to meet with appellant but never did. Appellant testified when he stepped outside after the meeting, the detective and another officer grabbed each of his arms, put him against the truck, patted him down, and handcuffed him. He thought he was under arrest. He denied involvement in Lacy's murder, but stated he was afraid of the real perpetrators because they had threatened to hurt his daughter. He testified he tried to take credit for the killing to avoid harm to himself or his family.[5]

The trial court denied the motion to suppress and entered findings of fact and conclusions of law. The court concluded (1) appellant was lawfully detained, the detective had reasonable suspicion to detain appellant, and the detention was for a reasonable amount of time; (2) appellant understood the "Miranda [w]arnings and

---

[5] On the videotape, appellant first stated that Lacy was killed in a struggle that ensued when one of the other perpetrators, Mike Larrabee, showed up as Lacy made unwanted sexual advances toward appellant. Appellant then stated he alone killed Lacy. He lastly stated that Lacy was killed in a struggle during the robbery when appellant threw the first punch, but Larrabee and the other perpetrator, Marcus Shuff, threw the blows that killed Lacy.

indicated his understanding by freely initialing next to them"; and (3) appellant "freely, knowingly, and voluntarily waived his constitutional rights and gave a voluntary statement to the [p]olice."

### *Motion to Suppress*

In his first issue, appellant argues that the trial court erred in denying his motion to suppress because appellant's confession was the fruit of an unlawful arrest made without a warrant or probable cause, which rendered the confession inadmissible under Texas Code of Criminal Procedure Article 38.23.[6] The State argues that appellant had not been arrested when he made his confession, but was lawfully detained for a reasonable time based on the detective's reasonable suspicion that appellant had been involved in Lacy's murder. Because we hold that the detective had probable cause to arrest appellant before he was taken to the police station, we need not discuss the State's contention that appellant was lawfully detained.[7]

We review a trial court's ruling on a motion to suppress under an abuse-of-discretion standard. *See Villareal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). At a hearing on a motion to suppress, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). We afford almost complete deference to the trial court's determination of historical facts supported by the record, as well as to mixed questions of law and fact dependent on the determination of a witness's credibility and demeanor. *See State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000). We consider issues that present purely legal questions under a de novo standard. *See id*.

The trial court is the sole fact-finder at a suppression hearing and may freely believe or disbelieve all or part of the evidence presented. *See id*. at 855; *Monge v. State*,

---

[6] Article 38.23 renders evidence obtained in violation of the Texas or United States Constitution inadmissible during trial of a criminal case. Tex. Code Crim. Proc. art. 38.23(a).

[7] The State neither argued to the trial court nor argues on appeal that probable cause existed to arrest appellant before he was taken to the station. Likewise, the trial court based its findings of fact on lawful detention, which was the ground urged in appellant's motion, rather than probable cause.

4

276 S.W.3d 180, 184 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Therefore, we review the evidence in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006); *Monge*, 267 S.W.3d at 184. We will sustain the trial court's ruling if it is reasonably supported by the record and correct under any applicable legal theory. *See Ross*, 32 S.W.3d at 855–56; *Monge*, 267 S.W.3d at 184.

**Probable Cause**. Generally, police officers must obtain an arrest warrant before taking someone into custody, but statutory exceptions to this rule exist. *Hughes v. State*, 24 S.W.3d 833, 838 (Tex. Crim. App. 2000). Appellant argues he was arrested without a warrant in violation of Code of Criminal Procedure Articles 14.01 and 14.04.[8] In the case at bar, however, circumstances demonstrate the justification to arrest without a warrant arose from Article 14.03(a)(6).[9]

To arrest lawfully under Article 14.03(a)(6), a person must have made a statement to an officer that would be admissible under Article 38.21 and establishes probable cause to believe that the person has committed a felony. *Id.*; *see also Monge*, 276 S.W.3d at 189 n.6. A statement is admissible under Article 38.21 if it was freely and voluntarily made without compulsion or persuasion, under rules prescribed in the Code of Criminal Procedure following Article 38.21. Tex. Code Crim. Proc. art. 38.21. Article 38.22 provides, "Nothing in this article precludes the admission of a statement . . . that does not stem from custodial interrogation." *Id.* art. 38.22 § 5; *see Dowthitt v. State*, 931 S.W.2d 244, 262 (Tex. Crim. App. 1996) (noting Article 38.22 does not preclude admission of

---

[8] Article 14.01 allows an officer to make a warrantless arrest for an offense committed in his presence or within his view. Tex. Code Crim. Proc. art. 14.01. Article 14.04 allows an officer to make a warrantless arrest when the representation of a credible person shows by satisfactory proof that a felony has been committed and the offender is about to escape. *Id.* art. 14.04.

[9] While the State neither argued Article 14.03(a)(6) at the suppression hearing or does so on appeal, this does not foreclose our consideration of that issue. It is well-settled that a court of appeals may affirm a trial court's decision on a legal theory not presented to the trial court without violating "ordinary notions of procedural default," which do not require a prevailing party to list or verbalize in the trial court every basis for upholding a decision. *Hailey v. State*, 87 S.W.3d 118, 121–22 (Tex. Crim. App. 2002); *see also State v. Mercado*, 972 S.W.2d 75, 77 (Tex. Crim. App. 1998) (acknowledging when prosecution prevails on suppression motion, "the government cannot be faulted for not insisting upon an inquiry into yet another basis upon which it might defeat the suppression motion").

5

non-custodial statements). Probable cause exists when the police have reasonably trustworthy information, considered as a whole, sufficient to warrant a reasonable person to believe a particular person has committed or is committing an offense. *Hughes*, 24 S.W.3d at 838. Probable cause requires more than mere suspicion but far less evidence than needed to support a conviction or even to support a finding by a preponderance of the evidence. *Id.*

A person commits murder by (1) intentionally or knowingly causing the death of an individual, (2) intending to cause serious bodily injury and committing an act clearly dangerous to human life that causes the death of an individual, or (3) committing or attempting to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight therefrom, committing or attempting to commit an act clearly dangerous to human life that causes the death of an individual. Tex. Penal Code § 19.02(b).

Considered as a whole, sufficient evidence was presented to show that officers had probable cause to believe appellant was involved in Lacy's murder. Appellant called the detective to inquire regarding the whereabouts of Lacy's relatives. When the detective did not call back with the requested information, appellant again called to obtain this information and at some point asked where Lacy was buried. Appellant became increasingly emotional throughout the course of their several telephone conversations. When the detective asked whether appellant had been involved in Lacy's murder and what his role was, appellant responded, "Major."[10] Appellant's statement was given freely and voluntarily in response to the detective's question and did not stem from custodial interrogation. From the totality of the circumstances related to appellant's statements, we hold probable cause existed to arrest appellant without a warrant for

---

[10] Although appellant disputes sounding emotional and making this statement, the trial judge, as the sole fact-finder, was free to disbelieve this testimony. *See Ross*, 32 S.W.3d at 855; *Monge*, 267 S.W.3d at 184. The trial judge found the detective's testimony on this issue to be credible.

Lacy's murder under Article 14.03(a)(6).[11]  *See Dowthitt*, 931 S.W.2d at 256 (holding appellant's admission that he was present during murders, in light of earlier evasions and inconsistencies, established probable cause to arrest appellant for murder even though appellant did not admit to committing offense:  "[w]hile appellant did not admit to committing the offenses, his admission that he was present during the murders was incriminating, and a reasonable person would have realized the incriminating nature of the admission.").  Thus, appellant's videotaped confession obtained after he was taken to the station (and undisputedly after he received *Miranda* warnings and indicated he understood his rights) was not the fruit of an unlawful arrest that would be inadmissible at trial under Article 38.23.

**Improper Predicate**.  Appellant also argues that his videotaped confession was inadmissible because the State did not lay the proper predicate that the operator of the video camera was competent or that all voices on the recording were identified, as required by Code of Criminal Procedure Article 38.22.  Tex. Code Crim. Proc. art. 38.22 § 3(a)(3)–(4).  But appellant did not object to the admissibility of the videotape on this ground.[12]  Therefore, he has waived this complaint on appeal.  *See* Tex. R. App. P. 33.1(a); *Davidson v. State*, 25 S.W.3d 183, 186 n.4 (Tex. Crim. App. 2000) (stating that Article 38.22 is a procedural evidentiary rule, and a timely, specific objection is required to preserve error for appeal).

For these reasons, we overrule appellant's first issue.

### Jury Charge

In his second issue, appellant complains the trial court erred in denying appellant's requested jury charge instruction regarding the law of parties.  Appellant requested the

---

[11] Neither the detective's statement that he did not have probable cause to arrest appellant when appellant left the 24-Step Club nor counsel's statement at the suppression hearing that, at that time, there was reasonable suspicion to detain, but not probable cause, is relevant to our analysis.  *See State v. Sheppard*, 271 S.W.3d 281 (Tex. Crim. App. 2008) (noting existence of reasonable suspicion or probable cause is a legal conclusion subject to de novo review).

[12] Appellant made no objection to the admission of the videotape subject to its being "the same one I've seen."

following instruction: "In order to support a conviction under the law of parties, the evidence must show that at the time of the offense the parties were acting together, each contributing some part towards the execution of their common purpose." But the trial court submitted the following instruction to the jury:

> *A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.* Mere presence alone will not constitute one a party to an offense.

(Emphasis added.)

"Our first duty in analyzing a jury-charge issue is to decide whether error exists." *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). A jury charge that tracks the language of a particular statute is a proper charge on the statutory issue and, therefore, not erroneous. *Riddle v. State*, 888 S.W.2d 1, 8 (Tex. Crim. App. 1994); *Escobar v. State*, 28 S.W.3d 767, 778 (Tex. App.—Corpus Christi 2000, pet. ref'd) ("A charge provision that tracks the relevant statute is sufficient."); *Massie v. State*, 744 S.W.2d 314, 317 (Tex. App.—Dallas 1988, pet. ref'd) ("[N]o error occurs when the charge tracks the language of the applicable statute, and a case will not be reversed if the charge taken as a whole, accurately reflects the legal issues."). Here, the above-emphasized language in the charge submitted to the jury states the Penal Code's law-of-the-parties language verbatim. *See* Tex. Penal Code § 7.02(a)(2). Appellant did not explain to the trial court why inclusion of his requested instruction was necessary, and we conclude it was not. Because the jury charge directly tracked the language of the statute, we conclude the trial court did not err in denying appellant's request for inclusion of the additional instruction. *See Riddle*, 888 S.W.2d at 8. Appellant's second issue is overruled.

8

## *Conclusion*

We overrule appellant's issues on appeal.  The judgment of the trial court is affirmed.


/s/　　　　　Martha Hill Jamison
　　　　　　Justice


Panel consists of Justices Frost, Seymore, and Jamison.

Do Not Publish — TEX. R. APP. P. 47.2(b).