

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-19-00221-CR

JACE MARTIN LAWS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th District Court
Gregg County, Texas
Trial Court No. 48,106-A

Before Morriss, C.J., Stevens and van Cleef, JJ.
Memorandum Opinion by Justice Stevens

## MEMORANDUM OPINION

A Gregg County jury convicted Jace Martin Laws of assaulting peace officers Nathaniel Lemmon and Christopher Byrdsong. *See* TEX. PENAL CODE ANN. § 22.01(b-2) (Supp.). In a prior opinion from Laws's appeal, we overruled six points of error and affirmed the trial court's judgment. After granting a petition for review on Laws's complaint that the trial court erred by allowing an alternate juror to be present in the jury room during deliberations, the Texas Court of Criminal Appeals remanded this case to us to "determine if Article 36.22 [of the Texas Code of Criminal Procedure] was violated when the alternate juror retired with the jury while it deliberated, and if so, whether [Laws] was harmed." *Laws v. State*, 640 S.W.3d 227, 231 (Tex. Crim. App. 2022). In addition to raising these issues, Laws also argues, for the first time after remand, that the trial court violated his constitutional right to have a jury "composed of twelve persons." TEX. CONST. art. V, § 13. Because we find that (1) Laws cannot raise a new constitutional complaint following remand and (2) Laws was unharmed by any assumed error, we again affirm the trial court's judgment.

## I.      Factual and Procedural Background

At trial, Lemmon, an officer with the Longview Police Department (LPD), testified that he encountered Laws while investigating a call for a suspicious vehicle at an electrical substation. According to Lemmon, dispatchers reported that the vehicle Lemmon found was involved in another crime under investigation. Laws exited the driver's side of the vehicle and Byrdsong, a patrol officer with the LPD, arrived at the scene. After Byrdsong's arrival, Laws began trying to take off his coveralls, revealing what looked like a gun tucked underneath them. Although Laws yelled out that the gun was fake, a fact that was later confirmed, Byrdsong drew

2

his weapon when he saw Laws grab "what appeared to be a handgun." From there, efforts to restrain Laws turned into an all-out brawl, as shown by the digital recording of his arrest, which was played for the jury.

Testimony and video showed that, instead of complying with Lemmon and Byrdsong's instructions, Laws fled and jumped over a barricade but was quickly caught by Byrdsong. Byrdsong testified that Laws struck him in several places, including his genitals, while he was trying to apprehend Laws. Laws was able to evade Byrdsong and jumped back over the barricade where Lemmon was waiting. Lemmon's effort to subdue Laws also failed. Lemmon testified that Laws struck and clawed at his face, scratched his gums, injured his ankle, and tried grabbing his genitals. Even though Lemmon tased Laws, Laws continued fighting and tried to get back into the car.

Byrdsong intervened when he saw Laws strike Lemmon but was again overtaken by Laws, who grabbed his gun during the fight. Although Byrdsong was able to quickly get Laws's hand off his gun, Laws grabbed the mace held by Lemmon and sprayed both Byrdsong and Lemmon with the mace before other LPD backup officers arrived at the scene to subdue Laws. Photographs of Byrdsong's injuries were shown to the jury.

Before the charge conference, the trial court provided the parties with the proposed jury charge, which included the following instructions for both the guilt/innocence and punishment phases of trial:

> Juror Number 50, you are an alternate juror. As an alternate juror, you are to sit inside the jury room while your fellow jurors deliberate. You are not to participate in the deliberations, discussion nor are you to vote on the verdict. You are to sit silent in observation of your fellow jurors.

3

Please disregard any comment, statement[,] or opinion by the alternate juror. They shall not be used in your deliberations.

Laws objected to that portion of the charge, arguing the following:

On page 9, the next-to-the-last statement where it's allowing a juror, the alternate juror, to remain in the jury room.

. . . .

. . . . Now I know there's -- and you're instructing him not to speak, but, I mean, I think there's just too much of a risk and the danger for them to bring input. We can't police that. We just have to trust that. I think out of an abundance of caution I think we need to do like we always do and ask them to maybe go downstairs and wait in the room. And I don't think it's really wasting that much time if -- I don't anticipate something happening to a juror; but if it does, I don't think it's going to take long for him to catch up. But I just think the danger of possible abuse of that is just too -- it's too high, Judge, and I am going to object to that.

The trial court overruled counsel's request.[1]

The trial court read the instructions, including the prohibition about communicating with the alternate juror, to the jury. After the trial court confirmed from the foreperson that the jury had reached a unanimous decision, the trial court read the verdict of guilt on both counts in the indictment. Laws's counsel declined the opportunity to question the jury.

Laws pled true to the State's punishment enhancement allegation, making his second-degree-felony offenses punishable under the range applicable for first-degree felonies. *See* TEX. PENAL CODE ANN. §§ 12.42(b), 22.01(b-2). After hearing punishment evidence, including that Laws had been previously convicted of aggravated robbery of a bank and state-jail-felony theft

---

[1]Citing judicial economy, the trial court reasoned:

You know, I guess I'll take judicial notice of who breaks the law. This is just the new way because what happens is if one of the jurors was sick, one of them can't serve, then the jury has to basically start all over. And I understand your -- you make a good valid point about the danger. I've done this several times before, it's never been an issue.

4

and that he had to be extradited from Belize, the jury assessed a sentence of thirty years' imprisonment for the assault of Lemmon and forty years' imprisonment for the assault of Byrdsong.

## II. Laws Cannot Raise a New Constitutional Complaint Following Remand

Laws argues that the alternate juror's presence in the jury room violated Article V, Section 13, of the Texas Constitution, which states that "Grand and petit juries in the District Courts shall be composed of twelve persons." TEX. CONST. art. V, § 13. We conclude that Laws is not permitted to raise this issue for the first time after remand.

In 2010, the Texas Court of Criminal Appeals held that allowing an alternate juror into the deliberation room does not violate Article V, Section 13, because "[a]s long as only the twelve regular jurors voted on the verdicts that the appellants received, it cannot be said that they were judged by a jury of more than the constitutionally requisite number." *Trinidad v. State*, 312 S.W.3d 23, 28 (Tex. Crim. App. 2010). In other words, the fact "[t]hat the alternate jurors were present in the jury rooms during deliberations, and may even have participated in all but the voting, does not mean that the jury was 'composed' of more than twelve members for purposes of Article V, Section 13." *Id.*

Citing to *Trinidad*, Laws's original briefing to this Court acknowledged that "the presence of an alternate juror in the room during deliberations [did] not violate Article V, Section 13 of the Texas Constitution." Because "Rule 38.1 [of the Texas Rules of Appellate Procedure] requires that an appellant designate all issues for review in the original brief," and because Laws's original brief conceded the lack of a constitutional issue, he is not permitted to

now raise a new constitutional issue. *Garrett v. State*, 220 S.W.3d 926, 928 (Tex. Crim. App. 2007).

In fact, the only new issues that an appellant may brief on remand are those issues raised by the decision of the Texas Court of Criminal Appeals or necessary to its application on remand. *Ex parte Chamberlain*, 352 S.W.3d 121, 123 n.3 (Tex. App.—Fort Worth 2011, pet. ref'd) (op. on remand) (stating that issues on remand are limited to those raised by the opinion of the Texas Court of Criminal Appeals or its application on remand); *Wooldridge v. State*, 319 S.W.3d 747, 750 (Tex. App.—Eastland 2009, pet. ref'd) (op. on remand) (same); *Lopez v. State*, 57 S.W.3d 625, 629 (Tex. App.—Corpus Christi 2001, pet. ref'd) (op. on remand) (same). In discussing the facts of our case, the Texas Court of Criminal Appeals specifically noted that, at trial, "[n]o one mentioned Article V of the Texas Constitution or whether the presence of an alternate juror violated Appellant's right to a twelve-person jury." *Laws*, 640 S.W.3d at 231. Since no constitutional issue was either before this Court or the Texas Court of Criminal Appeals, the case was remanded to us to address only whether the alternate juror's presence constituted a statutory violation and whether Laws was harmed by any statutory error. *Id.* Also, we limited the additional briefing to a harm analysis and did not grant leave to address an entirely new constitutional issue.[2] *See Ex parte Chamberlain*, 352 S.W.3d at 123 n.3.

---

[2]In our letter inviting further briefing on the issue of harm, we wrote the following:

> The Texas Court of Criminal Appeals has remanded this case to us to "determine if Article 36.22 was violated when the alternate juror retired with the jury while it deliberated, and, if so, whether [Laws] was harmed." *Laws v. State*, ---S.W.3d---, 2022 WL 302536 (Tex. Crim. App. Feb.2, 2022). While the issue of whether Article 36.22 was violated has already been fully briefed, we previously explained that Laws's "brief did not address the issue of how he was harmed by the alternate juror's presence in the deliberation room." *Laws v State*, 629 S.W.3d 350, 363 (Tex. App.—Texarkana 2020), *rev'd*, 2022 WL 302536 (Tex. Crim. App. Feb. 2, 2022). As a result, we

We find that Laws conceded the lack of a constitutional issue in his opening brief and cannot now raise a new constitutional complaint after remand from the Texas Court of Criminal Appeals. As a result, we overrule this point of error.

### III.    Laws Was Unharmed by Any Assumed Error

Article 36.22 of the Texas Code of Criminal Procedure, titled "Conversing with jury," has two provisions. The first provision states, "No person shall be permitted to be with a jury while it is deliberating." TEX. CODE CRIM. PROC. ANN. art. 36.22. The second provision states, "No person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court." *Id.* "The primary goal of Article 36.22 is to insulate jurors from outside influence." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). Laws argues that the trial court violated Article 36.22 when it permitted the alternate juror to enter the jury room during deliberations. Assuming error, we find that Laws was unharmed by the alternate juror's presence in the deliberation room.

#### A.    We Assume Error

Article 33.011 discusses the procedures applicable to alternate jurors. Prior to 2007, an alternate juror was prohibited from entering the jury deliberation room because of Article 33.011(b), which formerly "provided that '[a]n alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict." *Trinidad*, 312 S.W.3d at 24 n.2 (quoting Act of May 30, 1983, 68th Leg., R.S., ch. 775, § 2, 1983 Tex. Gen. Laws 4593, 4594, *amended by* Act of May 24, 2007, 80th Leg., R.S., ch. 846, § 1, 2007 Tex. Gen. Laws

request briefing *solely* related to the issue of harm. *This is not an invitation for additional briefing on any other issue.*

(Emphasis added).

7

1774 (eff. Sept. 1, 2007)). Under the prior version of Article 33.011, if a juror became sick or otherwise unable to continue deliberations, a mistrial would be required if the parties disagreed on whether to proceed with an eleven-person jury. House Research Org., Bill Analysis, Tex. H.B. 1086, 80th Leg., R.S. (2007).

To remedy this issue, in 2007, the Texas Legislature amended Article 33.011(b), which gives alternate jurors the "same functions, powers, facilities, security, and privileges as regular jurors." TEX. CODE CRIM. PROC. ANN. art. 33.011(b) (Supp.). As a result of the amendment, an alternate juror is "no longer . . . discharged at the time that the jury retires to deliberate, but [is] now . . . discharged after the jury has rendered a verdict." *Trinidad*, 312 S.W.3d at 24 (citing TEX. CODE CRIM. PROC. ANN. art. 33.011(b)). The 2007 amendment (1) "allow[ed] qualified jurors to step in if a juror had a health issue or was guilty of misconduct and was dismissed after deliberations beg[an]," (2) removed the need for a mistrial if the parties could not agree to proceed with an eleven-person jury, and (3) saved "[t]he time and cost involved in starting the trial anew." House Research Org., Bill Analysis, Tex. H.B. 1086, 80th Leg., R.S.

As the Texas Court of Criminal Appeals has lamented,

> Unfortunately, the amended statute does not indicate whether the alternate juror should be allowed to be present for, and to participate in, the jury's deliberations or, instead, whether he should be sequestered from the regular jury during its deliberations until such time as the alternate's services might be required by the disability of a regular juror.

*Trinidad*, 312 S.W.3d at 24.[3] To date, the question of what to do with an alternate juror during deliberations has not been expressly resolved and has led to varied practices in the trial courts.[4]

---

[3]The issue was contemplated during the legislative amendment, as shown by the Bill Analysis, which stated,

As recently noted by the Waco court, the Texas Court of Criminal Appeals in *Trinidad* "declined . . . to determine whether the presence of an alternate juror during deliberations violated article 36.22." *Becerra v. State*, No. 10-17-00143-CR, 2022 WL 1177391, at \*2 (Tex. App.—Waco Apr. 20, 2022, pet. filed) (mem. op., not designated for publication) (citing *Trinidad*, 312 S.W.3d at 29–30). Yet, it appeared to bless the procedure in *Gonzales v. State*, 616 S.W.3d 585 (Tex. Crim. App. 2020), which involved the question of whether the Sixth Amendment required the trial court to instruct the jury to begin its deliberations anew when an alternate juror replaced a regular juror. In describing the facts of the case, the Texas Court of Criminal Appeals characterized the following instruction, allowing the alternate jurors to enter

---

> It is unclear what the alternate jurors would do while the jury is in deliberations and how having them outside of the deliberations would affect jury verdicts. If called to fill in for another juror during deliberations, alternative jurors would have missed juries' analysis and discussions up to that point, something that could put them at a disadvantage and have them make decisions when they were less than fully informed.

House Research Org., Bill Analysis, Tex. H.B. 1086, 80th Leg., R.S.

[4]Judge Johnson's concurrence in *Trinidad* read:

> These cases are before the Court because of a missing piece in the statutory amendments to Article 33.011(b); what is the trial judge to do with the retained alternate jurors? The trial judge in this case apparently considered judicial economy and decided to have the alternate juror retire with the "real" jurors; if a juror became disabled after deliberations began and the alternate juror was not privy to the discussions up to that point, the jury would have to begin again so as to acquaint the alternate juror with the current status of the discussions. The later in deliberations that the disability of a juror occurred, the longer the catching-up would take.

> An equally valid argument could be made that an alternate juror should remain outside of the jury room during deliberations unless, and until, a juror became disabled. The disability of a juror is an uncommon event, and having the alternate juror remain outside would avoid just the situation we address here.

> In any event, we are left to discern, if we can, what the legislature intended. More concise language about what to do with the retained alternate juror would be most helpful.

*Trinidad*, 312 S.W.3d at 30 (Johnson, J., concurring).

9

the jury room during deliberations, as "in accord with the [post-2007] version of Article 33.011(b)":

> The law now requires that the alternate jurors remain through the entirety of the trial process.
>
> The alternate jurors will accompany the jurors into the jury room. The alternate jurors will not participate in any deliberations or in any voting unless they are instructed to do so by this Court. The alternate jurors must attentively listen to all deliberations as it is always uncertain if and when we might need to utilize one or both of them.

*Id.* at 588. The court concluded that, "even if the Sixth Amendment required the trial court to instruct the reconstituted jury to deliberate anew, the error in failing to do so was harmless beyond a reasonable doubt under the circumstances of this case in which the alternates attended deliberation before the substitution." *Id.* at 593. In other words, because "the alternate jurors . . . had the benefit of having attended the pre-substitution deliberations," the need to instruct the jury to deliberate anew was obviated. *Id.* at 594.

After *Gonzales*, the Waco court in *Becerra* simply presumed statutory error after noting that it had "found no authority that ha[d] established a hard rule that the presence of the alternate jurors in the jury room during deliberations [was] absolutely improper" and that the "Court of Criminal Appeals [had not] determine[d] otherwise." *Becerra*, 2022 WL 1177391, at *5. Out of an abundance of caution, we also assume, without deciding, that the alternate juror's presence in the jury room during deliberation violated Article 36.22's language prohibiting a "person . . . to be with a jury while it is deliberating." TEX. CODE CRIM. PROC. ANN. art. 36.22.

10

## B.     Laws Was Not Harmed by the Assumed Error

Laws argues that any Article 36.22 error creates a presumption of harm that the State must rebut. We believe that Laws's argument is based on a misreading of *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). As previously mentioned, Article 36.22 has two distinct parts. The first provision states, "No person shall be permitted to be with a jury while it is deliberating." The second provision states, "No person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court." TEX. CODE CRIM. PROC. ANN. art. 36.22. Because a violation of the second provision constitutes jury misconduct and strikes at Article 36.22's goal of preventing outside influence, a violation of the second provision is serious and punishable by contempt. *See* TEX. CODE CRIM. PROC. ANN. art. 36.23. As a result, violations of the second provision raise a rebuttable presumption of harm.

In addressing only the second provision of Article 36.22 following defense counsel's allegation that he had heard a juror speaking on the phone with an unknown person about the case, the Texas Court of Criminal Appeals wrote that, "if a violation is shown, the effectiveness of possible remedies will be determined in part by whether the conversation influenced the juror. A violation of Article 36.22, once proven by the defendant, triggers a rebuttable presumption of injury to the accused, and a mistrial may be warranted." *Ocon*, 284 S.W.3d at 884 (citing *Hughes v. State*, 24 S.W.3d 833, 842 (Tex. Crim. App. 2000)). The "violation" as contemplated in *Ocon*, was "convers[ing] with a juror." *Id.*

In our view, *Ocon's* application of its rule indicates both that it was not intended to apply to the first provision of Article 36.22 and that the presumption of harm is not automatic. The application in *Ocon* states,

11

> The communication at issue may have constituted juror misconduct in violation of Article 36.22, which prohibits conversing with a juror about the case on trial. However, a violation of Article 36.22 does not automatically warrant a mistrial. *Reporting the conversation to the trial judge* raised the rebuttable presumption of injury to Appellant.

*Id.* at 885 (emphasis added) (footnotes omitted) (citations omitted). The language in *Ocon* stating that a violation of Article 36.22 triggers a presumption of harm derives from *Hughes v. State*, in which the Texas Court of Criminal Appeals wrote that, "[w]hen a juror converses with an unauthorized person about the case, injury to the accused is presumed, and a new trial may be warranted." *Hughes v. State*, 24 S.W.3d 833, 842 (Tex. Crim. App. 2000). *Hughes* also clarified that an "appellant has the burden of proving the allegation of jury misconduct." *Id.*

Because this case does not involve the second provision of Article 36.22 or any complaint about communication with the jury, we do not believe Laws is entitled to any *Ocon/Hughes* presumption.[5] This is because the "defendant's burden is not satisfied if there is no showing what a reported conversation was about." *Hendrix v. State*, No. 05-18-00822-CR, 2020 WL 3424915, at *4 (Tex. App.—Dallas June 23, 2020, no pet.) (mem. op., not designated for publication)[6] (citing *Stults v. State*, 23 S.W.3d 198, 207 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd)). In other words, "the mere presence of the alternate juror in the jury room during deliberations" does not satisfy the defendant's initial burden. *Id.* "Without a showing

---

[5]Although *Ocon* clearly applied the presumption of harm to the second provision of Article 36.22 only, we previously applied it to the first provision in *Duke v. State*, 365 S.W.3d 772 (Tex. App.—Texarkana 2012, pet. ref'd), which is heavily cited by Laws. Our opinion in *Duke* relied on *Ocon* and *Robinson v. State*, 851 S.W.2d 216, 230 (Tex. Crim. App. 1991), but *Ocon* and *Robinson* were both cases involving the second provision of Article 36.22 and questions of jury misconduct.

[6]"Although unpublished cases have no precedential value, we may take guidance from them 'as an aid in developing reasoning that may be employed.'" *Rhymes v. State*, 536 S.W.3d 85, 99 n.9 (Tex. App.—Texarkana 2017, pet. ref'd) (quoting *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd)).

that the alternate juror actually participated in deliberations or communicated with the regular jurors about the case, [Appellant] has not met his initial burden to raise a presumption of harm." *Id.*; *see Castillo v. State*, 319 S.W.3d 966, 973 (Tex. App.—Austin 2010, pet. ref'd) ("presumption of harm did not arise because defendant presented no evidence that the alternate jurors conversed with the regular jurors"); *Patino v. State*, No. 12-18-00327-CR, 2019 WL 4197057, at *2 (Tex. App.—Tyler Sept. 4, 2019, no pet.) (mem. op., not designated for publication) ("appellant did not meet his initial burden where he made no showing of any conversation about the case between the alternate juror and the regular jurors during the time period involved"); *Jones v. State*, No. 09-15-00092-CR, 2015 WL 6998971, at *5–6 (Tex. App.—Beaumont Nov. 12, 2015, pet. ref'd) (mem. op., not designated for publication) ("rejecting appellant's claim that alternate juror's presence during deliberations raised presumption of harm where appellant presented no evidence that the alternate juror 'participated' through verbal or non-verbal means with the jurors and, therefore, did not meet his initial burden of showing harm")); *see also Martz v. State*, No. 13-17-00382-CR, 2018 WL 3655437, at *3 (Tex. App.—Corpus Christi Aug. 2, 2018, no pet.) (mem. op., not designated for publication); *Bogue v. State*, 204 S.W.3d 828, 829 (Tex. App.—Texarkana 2006, pet. ref'd).

In any event, the Texas Court of Criminal Appeals has directed us to analyze whether the assumed error "was harmful under the standard that governs the reversibility of statutory error," which requires a defendant to show that the error "affected substantial rights." *Trinidad*, 312 S.W.3d 26 n.15 (citing TEX. R. APP. P. 44.2(b)). An error does not affect substantial rights if the appellate court has "a fair assurance from an examination of the record as a whole that the error

13

did not influence the jury, or had but a slight effect." *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018).

In this case, the State's evidence against Laws was strong. Byrdsong and Lemmon testified about Laws's assaults, which the jury watched on video. Before entering the deliberation room, the alternate juror was instructed to sit silent and not participate in the deliberations, and the jury was likewise instructed to disregard any comment, statement, or opinion by the alternate juror. "We generally presume the jury follows the trial court's instructions in the manner presented," and nothing in the record shows that the alternate juror communicated with other jurors through verbal or non-verbal means or that any of the other jurors were influenced by the alternate juror's presence during deliberation. *Garcia v. State*, 614 S.W.3d 749, 757 (Tex. Crim. App. 2019) (quoting *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998)); *see Ocon*, 284 S.W.3d at 885 (Even where defense counsel meets the initial burden, the State "rebut[s] the presumption of harm by . . . reminding the judge that the jurors had been instructed not to talk about the case."); *Hendrix*, 2020 WL 342915, at *5; *Jones*, 2015 WL 6998971, at *5–6 (concluding that allowing an alternate juror in the jury room during deliberations was harmless because there was "no evidence that the alternate 'participated' through verbal or non-verbal means with the jurors"); *Bogue*, 204 S.W.3d at 830 ("The testimony of the alternate juror and of the foreman does nothing to show that the alternate's presence in the jury room . . . influenced the jury's verdict in any way. . . . [N]o harm is apparent from the record."). After the verdict was read, the jury confirmed that their decision was unanimous, and Laws's counsel declined the opportunity to question them. At punishment,

Laws pled true to the State's enhancement allegation, and the jury's assessment for each offense was less than half of the possible range applicable to first-degree felonies.

Based on the record before us, we have a fair assurance that the assumed statutory error did not influence the jury and conclude that Laws was not harmed by any alleged violation of Article 36.22. As a result, we overrule his last point of error.

## IV. Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Justice

Date Submitted: June 22, 2022
Date Decided: July 19, 2022

Do Not Publish