**Opinion issued October 4, 2012**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

**NO. 01-11-00417-CR**

_____

**ANTHONY BERNARD BRICE, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 232nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1275521**

**MEMORANDUM OPINION**

A jury convicted appellant, Anthony Bernard Brice, Jr., of the first-degree

felony offense of aggravated robbery and assessed punishment at twenty-three

years' confinement.[1]  In two issues, appellant contends (1) that the prosecutor's statement, made during closing argument of the guilt-innocence phase of the trial, that the complainant had no reason to commit aggravated perjury and to lie in her identification testimony constituted an improper jury argument; and (2) that the trial court abused its discretion in denying his motion for mistrial made during the punishment phase and failing to conduct a hearing to determine whether two jurors committed misconduct.

We affirm.

## Background

The complainant, Rosa Garcia, was the manager of a Family Dollar store in Tomball.  Shortly after 8:00 a.m. on August 9, 2010, Garcia was sitting at a computer kiosk located at the front of the store when two men entered.  Garcia turned toward the men when she heard one of them lock the front door.  Garcia described the man who locked the door, later identified as Alex Hubbard, as short and fat, and she described the other man, later identified as appellant, as tall and skinny.

According to Garcia, appellant walked over to Tammy McCoy, the assistant store manager, and pointed a gun at her.  Garcia watched appellant interact with McCoy "from the very beginning" of the incident, and she saw him hold a gun to

---

[1]     *See* TEX. PENAL CODE ANN. § 29.03(a)(2) (Vernon 2011).

2

McCoy's head. Appellant walked McCoy over to the store's safe. Garcia also stated that although appellant originally had covered his face with either his shirt or a bandana, he had to let go of the shirt or bandana to grab McCoy, and Garcia was able to see and "study" his face. Garcia testified that appellant also pointed a gun at her and told her to do whatever Hubbard instructed her to do.

Hubbard grabbed Garcia and began walking her toward the stockroom. Garcia testified that Hubbard had covered the lower half of his face with his shirt, but he let go of his shirt as he walked Garcia back to the stockroom, and Garcia was able to get a "good look" at his face. Hubbard dragged Garcia over to a pole in the store, and she looked at his face the entire time he was dragging her. Hubbard used a zip tie to secure Garcia to the pole. After McCoy opened the safe, appellant tied her to the same pole to which Hubbard had tied Garcia. Appellant and Hubbard stole over $600 from the store. Eventually, Ismael Cuevas, a stocker at the Family Dollar, arrived, untied Garcia and McCoy, and called the police.

When the police arrived, Garcia gave the officers a "basic" description of the suspects and told them that, if she saw the suspects again, she would be able to identify them. Garcia testified that a police officer subsequently showed her two photo-arrays, and she made two identifications. She stated that she had never seen appellant before the incident, but she felt "confident" that she "got a good look at

3

him" during the robbery. She testified that she was "100 percent" sure that the two men she identified in the photo-arrays were the suspects in the robbery.[2]

Harris County Sheriff's Department Deputy Z. Long testified that he prepared two photo-arrays, one containing Hubbard's picture and one containing appellant's picture. According to Deputy Long, Garcia "almost immediately" identified both appellant and Hubbard. In addition to circling appellant's photo, Garcia also wrote "man with gun" on the photo-array, indicating that appellant displayed a gun during the robbery.

During closing argument in the guilt-innocence phase of the trial, the prosecutor discussed Garcia's testimony concerning her viewing of appellant's face and her later identification of appellant and Hubbard in a photo-array. She stated, "[Garcia] comes in here and she tells you the truth. She's not mistaken. Okay. She came in here and she tells you what she knows and she tells the truth." The prosecutor reiterated that Garcia testified she was sure that she saw appellant's face. The prosecutor stated, "She was confident she could see him. What reason does she have to come in here and commit aggravated perjury under oath and lie to you about that? There's no reason for that." Appellant acknowledges that his

---

[2]     Appellant, who had been released on bond pending trial, was present for voir dire, but he was not present for the examination of witnesses. Garcia, therefore, had no opportunity to make an in-court identification of appellant.

4

defense counsel did not object to or ask the trial court to instruct the jury to disregard this statement.

The jury subsequently found appellant guilty of aggravated robbery.

During the punishment phase of the trial, the State presented evidence that appellant and Hubbard were involved in several other robberies of north-Houston area Family Dollar stores during July and August 2010. On the morning of the second day of the punishment phase, outside the presence of the jury, the following exchange occurred:

| | |
|---|---|
| [Defense Counsel]: | Your Honor, I was approached earlier this morning and I talked to the district attorney—assistant district attorney in this case—another attorney was riding in the elevator with two jurors who were in our case—she believed were sitting in in our case, a white male juror with a white shirt and stripe and I think the black male juror that we have on our jury as well. She overheard the white male juror turn to the black male juror and say I can't believe that the defense attorney entered into evidence for the State, DNA evidence. Which, of course, didn't happen. |
| The Court: | I'm sorry. Repeat that, can't believe that— |
| [Defense Counsel]: | That he couldn't believe that the defense attorney entered into evidence for the State DNA evidence. Which, of course, didn't happen. We didn't—I didn't enter into evidence any DNA evidence. I think the only evidence that was entered on my behalf was the State's photo array when I was cross-examining Ms. Moses, which was |

| | |
|---|---|
| | going to be introduced by the State. And it was an agreement by the State that that was going to come in anyway. So, it was neither improper for that to happen anyway. Regardless there was a discussion between two jurors regarding the facts of this case. And I would motion for a mistrial. |
| The Court: | Does the State want to be heard on this? |
| [State]: | Yes, Judge. And just so the record is clear, that photo array, I actually stood and offered it while the defense was doing his cross-examination. So, it was offered by the State. But I mean, other than that, there was no— there hasn't even been any testimony on the DNA on the punishment phase anyways. So, that's all I have to say about that. You may want to—I mean, it's not jury misconduct. I don't think it is. But you may want to just tell the members of the jury to be sure that they're not talking about the case at all until they start deliberating. |
| [Defense Counsel]: | And I agree with that rendition. That's exactly what happened as far as the entering of evidence. |
| The Court: | Very well then. The motion for mistrial will be denied. |

Defense counsel did not request that the trial court hold a hearing on the issue; he did not request that the two jurors allegedly involved testify concerning their conversation; and he did not present the attorney who allegedly overheard the jurors and reported the conversation to defense counsel as a witness.

6

The jury ultimately assessed punishment at twenty-three years' confinement. Appellant did not file a motion for new trial, and this appeal followed.

## Improper Jury Argument

In his first issue, appellant contends that the prosecutor's statement during closing argument of the guilt-innocence phase of the trial—"What reason does [Garcia] have to come in here and commit aggravated perjury under oath and lie to you about [her identification of appellant]?"—constituted improper jury argument. The State contends that appellant failed to preserve this contention for appellate review because, as appellant acknowledges, defense counsel did not object to this argument when it occurred. We agree with the State.

Proper jury argument falls within four general categories: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to argument of opposing counsel, and (4) plea for law enforcement. *Gallo v. State*, 239 S.W.3d 757, 767 (Tex. Crim. App. 2007). To determine whether the argument properly falls within one of these categories, we consider the argument in light of the record as a whole. *Sandoval v. State*, 52 S.W.3d 851, 857 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd). Unless the argument is so improper that its prejudicial effect cannot be removed by an admonishment from the trial court, in most cases an injury from an improper jury argument can be cured when the court instructs the

jury to disregard the argument. *Davis v. State*, 268 S.W.3d 683, 694 (Tex. App.—Fort Worth 2008, pet. ref'd).

The Court of Criminal Appeals has held, however, that "a defendant's failure to object to a jury argument or a defendant's failure to pursue to an adverse ruling his objection to a jury argument forfeits his right to complain about the argument on appeal." *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). Thus, "Before a defendant will be permitted to complain on appeal about an erroneous jury argument or that an instruction to disregard could not have cured an erroneous jury argument, he will have to show he objected and pursued his objection to an adverse ruling." *Id.*; *see also Threadgill v. State*, 146 S.W.3d 654, 667 (Tex. Crim. App. 2004) ("[A]ppellant claims that the prosecutor erred by arguing at the guilt or innocence phase in such a way as to strike at appellant over the shoulders of his counsel. Appellant did not object to the prosecutor's argument and therefore failed to preserve error."); *McDonald v. State*, 186 S.W.3d 86, 91 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("[W]e follow *Cockrell* and hold that, by failing to object, McDonald forfeited his right to complain about the State's jury argument on appeal.").

Appellant cites *Harris v. State*, 827 S.W.2d 949, 963 (Tex. Crim. App. 1992), for the proposition that an exception to the rule requiring an objection to improper jury argument exists when the argument is so prejudicial that an

8

instruction to disregard cannot cure the harm, and, in that instance, an objection is not required to preserve error. In *Cockrell*, the Court of Criminal Appeals addressed what actions must be taken to preserve a complaint concerning an allegedly improper jury argument. 933 S.W.2d at 89. The court noted that its prior precedent provided that a defendant could complain for the first time on appeal about unobjected-to erroneous jury argument that could not have been cured by an instruction to disregard. *Id.* (citing *Romo v. State*, 631 S.W.2d 504, 505 (Tex. Crim. App. 1982) and *Montoya v. State*, 744 S.W.2d 15, 37 (Tex. Crim. App. 1987)). The Court of Criminal Appeals then concluded that a defendant's "'right' not to be subjected to incurable erroneous jury arguments" is a right that is forfeited by a failure to insist upon it. *Id.* (citing *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993)). The court held that the defendant must object or pursue his improper jury argument objection to an adverse ruling in order to complain on appeal. *Id.* The court, therefore, "expressly overruled" *Romo*, *Montoya*, and "[a]ny prior cases to the contrary." *Id.* Thus, even in the case of an allegedly incurable erroneous jury argument, the defendant must object and pursue that objection to an adverse ruling. *Id.* ("Before a defendant will be permitted to complain on appeal . . . that *an instruction to disregard could not have cured* an erroneous jury argument, he will have to show he objected and pursued his objection to an adverse ruling.") (emphasis added).

In instances concerning an incurable jury argument, subsequent cases have required the defendant to, at the least, "request a mistrial to preserve error on appeal because a mistrial would be the appropriate remedy." *McGinn v. State*, 961 S.W.2d 161, 165 (Tex. Crim. App. 1998) (citing *Cockrell*, 933 S.W.2d at 89); *Thompson v. State*, 89 S.W.3d 843, 851 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) ("[I]f the prejudice arising from the improper argument is *incurable*, a mistrial is appropriate and a request for a mistrial will preserve error on appeal.") (emphasis in original); *Nixon v. State*, 940 S.W.2d 687, 693 (Tex. App.—El Paso 1996, pet. ref'd) ("The Court of Criminal Appeals recently overturned the long-standing rule that a defendant need not object to incurable jury argument in order to preserve error. Consequently, a defendant must now object at trial and obtain an adverse ruling in order to complain on appeal of erroneous incurable jury argument."). Here, defense counsel did not object to the prosecutor's statement, request an instruction to disregard, or move for a mistrial on this ground. Thus, we conclude that appellant failed to preserve his complaint that the prosecutor's statement constituted improper jury argument for appellate review.

We overrule appellant's first issue.

## Motion for Mistrial

In his second issue, appellant contends that the trial court abused its discretion when it denied his motion for mistrial, made during the punishment

phase, without holding a hearing to determine whether two jurors engaged in juror misconduct when they allegedly discussed the case prior to deliberations.

A mistrial is an "appropriate remedy in 'extreme circumstances' for a narrow class of highly prejudicial and incurable errors." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009) (quoting *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)). A mistrial "halts trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile." *Id.* (citing *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). We determine whether an error requires a mistrial based on the facts of the particular case. *Id.* We review a trial court's denial of a motion for mistrial for an abuse of discretion. *Id.* We view the evidence in the light most favorable to the trial court's ruling, considering only the arguments before the court at the time of the ruling. *Id.* (citing *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004)).

Because a mistrial is an extreme remedy, a trial court should grant it "only when residual prejudice remains" after less drastic alternatives are explored. *See id.* at 884–85 (quoting *Barnett v. State*, 161 S.W.3d 128, 134 (Tex. App.—Fort Worth 2005), *aff'd*, 189 S.W.3d 272 (Tex. Crim. App. 2006)); *Bokemeyer v. State*, 355 S.W.3d 199, 202 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (holding same). Less drastic alternatives include instructing the jury not to discuss the case outside formal deliberations and "questioning the jury 'about the extent of any

11

prejudice,' if instructions alone do not sufficiently cure the problem." *Ocon*, 284 S.W.3d at 885; *Granados v. State*, 85 S.W.3d 217, 236 (Tex. Crim. App. 2002) (noting that, when defendant moves for mistrial on basis of juror misconduct, Court of Criminal Appeals' "juror misconduct precedents have permitted but not required examination at a hearing of jurors accused of misconduct"). Requesting a "lesser" remedy is not a prerequisite to a motion for mistrial, but if the movant does not first request a lesser remedy, we will not reverse the trial court's judgment if the problem could have been cured by the less drastic alternative. *Ocon*, 284 S.W.3d at 885; *Wright v. State*, No. 14-10-01193-CR, 2012 WL 2389455, at *15 (Tex. App.—Houston [14th Dist.] June 26, 2012, no pet. h.) ("A party who fails to request an instruction for the jury to disregard [before moving for a mistrial] forfeits appellate review of errors that could have been cured by such an instruction.").

In *Ocon*, defense counsel overheard a juror discussing the case on his cell phone while in the restroom. 284 S.W.3d at 882. Defense counsel brought this conversation to the trial court's attention, relayed the portion of the conversation that he overheard, and moved for a mistrial on the basis that the juror had impermissibly communicated with a third party concerning the case, in violation of Code of Criminal Procedure article 36.22. *Id.* at 882–84. The trial court did not question the juror about the alleged conversation, but it did instruct the jury not to

speak to anyone else about the case, and it denied defense counsel's motion for mistrial. *Id.* at 883.

In holding that the trial court did not abuse its discretion in denying Ocon's motion for mistrial, the Court of Criminal Appeals noted that "while questioning jurors about allegations of misconduct is a helpful tool for measuring the necessity for a mistrial, it is not required. Our case law does not establish juror questioning as a mandatory remedy, nor do the Texas Rules of Evidence." *Id.* at 886; *see also Granados*, 85 S.W.3d at 236 (providing that questioning jurors about allegations of misconduct is permitted but not required). The court held that, when considering a motion for mistrial, "if jurors are questioned, it should be at the behest of the movant. Precedent on this issue . . . establishes that it is incumbent upon the party moving for a mistrial to request an inquiry of the jurors." *Ocon*, 284 S.W.3d at 886; *see also Hughes v. State*, 24 S.W.3d 833, 842 (Tex. Crim. App. 2000) ("[A]ppellant has the burden of proving the allegation of juror misconduct."). The court further held that requiring the party who alleges juror misconduct to initiate juror questioning—a "less drastic remedy than a mistrial"—is consistent with general rules of error preservation. *Ocon*, 284 S.W.3d at 886. The Court of Criminal Appeals stated, "An appellant who moves for a mistrial without first requesting a less drastic alternative forfeits appellate review of that class of events that could have been cured by the lesser remedy." *Id.* at 886–87. Because Ocon's

13

"first action" in response to the alleged misconduct was to move for a mistrial, the court held that it would not reverse the trial court's judgment if "a lesser, un-requested alternative, such as juror questioning, could have cured the problem." *Id.* at 887.

Here, on the morning of the second day of the punishment phase, defense counsel informed the State and the trial court, outside the presence of the jury, that another attorney had approached him and told him that she heard two jurors who, she believed, were jurors for this case, discussing the case. The following exchange occurred:

| | |
|---|---|
| [Defense Counsel]: | Your Honor, I was approached earlier this morning and I talked to the district attorney—assistant district attorney in this case—another attorney was riding in the elevator with two jurors who were in our case—she believed were sitting in in our case, a white male juror with a white shirt and stripe and I think the black male juror that we have on our jury as well. She overheard the white male juror turn to the black male juror and say I can't believe that the defense attorney entered into evidence for the State, DNA evidence. Which, of course, didn't happen. |
| The Court: | I'm sorry. Repeat that, can't believe that— |
| [Defense Counsel]: | That he couldn't believe that the defense attorney entered into evidence for the State DNA evidence. Which, of course, didn't happen. We didn't—I didn't enter into evidence any DNA evidence. I think the only evidence that was entered on my behalf |

14

|  |  |
|---|---|
|  | was the State's photo array when I was cross-examining Ms. Moses, which was going to be introduced by the State. And it was an agreement by the State that that was going to come in anyway. So, it was neither improper for that to happen anyway. Regardless there was a discussion between two jurors regarding the facts of this case. And I would motion for a mistrial. |
| The Court: | Does the State want to be heard on this? |
| [State]: | Yes, Judge. And just so the record is clear, that photo array, I actually stood and offered it while the defense was doing his cross-examination. So, it was offered by the State. But I mean, other than that, there was no— there hasn't even been any testimony on the DNA on the punishment phase anyways. So, that's all I have to say about that. You may want to—I mean, it's not jury misconduct. I don't think it is. But you may want to just tell the members of the jury to be sure that they're not talking about the case at all until they start deliberating. |
| [Defense Counsel]: | And I agree with that rendition. That's exactly what happened as far as the entering of evidence. |
| The Court: | Very well then. The motion for mistrial will be denied. |

Appellant therefore moved for a mistrial as his "first action" in response to the jurors' alleged misconduct. *See id.* He did not request that the trial court instruct the jurors not to discuss the case until they retired for formal punishment-phase deliberations. He also did not request an inquiry of the two jurors who allegedly

15

conversed about the case or of the attorney who allegedly overheard these jurors and subsequently informed defense counsel.  There is no indication in the record that the trial court refused to hold a hearing on appellant's motion for mistrial. Instead, the record reflects that, although defense counsel moved for a mistrial, he did not request a hearing and he did not ask the trial court to hear testimony from the involved jurors and attorney concerning this incident.  *See id.* at 886 ("[I]f jurors are questioned, it should be at the behest of the movant. . . . [I]t is incumbent upon the party moving for a mistrial to request an inquiry of the jurors."); *see also Hughes*, 24 S.W.3d at 842 ("[A]ppellant has the burden of proving the allegations of juror misconduct.").

Because appellant moved for a mistrial "without first requesting a less drastic alternative," he has "forfeit[ed] appellate review of that class of events that could have been cured by the lesser remedy."  *See Ocon*, 284 S.W.3d at 886–87. As the Court of Criminal Appeals noted in *Ocon*, "[c]urative instructions frequently serve as effective alternatives to the extreme remedy of a mistrial" and "juror questioning" also constitutes a "lesser, un-requested alternative" that "could have cured the problem."  *See id.* at 887.  By contending that the trial court erred in denying his motion for mistrial without "questioning the jurors involved and obtaining assurances that they could be fair or learning that the jurors were biased," appellant implicitly acknowledges that remedies less drastic than a

mistrial were available to discover if any jurors were prejudiced and to prevent the jurors allegedly involved in the conversation from further discussing the case with other jurors before formal deliberations.[3] Because less drastic remedies were available to cure any prejudice that may have resulted from the jurors' alleged conversation, we will not reverse the judgment of the trial court. We therefore hold that the trial court did not abuse its discretion in denying appellant's motion for mistrial.

We overrule appellant's second issue.

## Conclusion

We affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Massengale, and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).

---

[3] The record contains no evidence that the two unidentified jurors allegedly involved in this conversation spoke about this topic with other members of the jury or considered this issue when deliberating over appellant's punishment.

17