**AFFIRM; Opinion issued February 12, 2013**



**In The**

**Court of Appeals**

**Fifth District of Texas at Dallas**

No. 05-11-01498-CR
No. 05-11-01499-CR
No. 05-11-01500-CR

**JOSEPH GEORGE BUCKALOO JR., Appellant**

**v.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 363rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause Nos. F10-53490-W, F10-71666-W, F10-71667-W**

**OPINION**

Before Justices FitzGerald, Fillmore, and Richter[1]
Opinion by Justice FitzGerald

Appellant was convicted of three aggravated assault offenses, each enhanced with a single prior conviction. He was sentenced to ninety-nine years' imprisonment for each offense. In three issues on appeal, appellant asserts the evidence is insufficient to support his convictions, the trial court erred in failing to remove a juror for misconduct, and the trial court erred in allowing evidence of extraneous misconduct by a third party. Concluding appellant's arguments are without merit, we affirm the trial court's judgments.

---

1.  The Hon. Martin E. Richter, Retired Justice, sitting by assignment.

**BACKGROUND**

In the early morning hours of March 20, 2010, appellant fired several shots into a house where his estranged wife, Estrella "Stella" Segovia and several of her relatives were spending the night. There were seven people inside the house: Stella and her daughter, Stella's cousin Debra Rodriguez, Debra's son Hector and his wife Bianca, and Debra's son Victor and his pregnant wife Aureya. One of the seven shots appellant fired into the house struck Bianca in the eye while she slept. Despite numerous surgeries, Bianca ultimately lost her eye.

Appellant was charged with aggravated assault in three separate indictments. The charges were consolidated and tried before a jury in a single trial. The jury found appellant guilty of all charges. Appellant pled true to the enhancement paragraphs in the indictments, and the jury sentenced him to ninety-nine years' imprisonment for each of the charged offenses.

Appellant brings three points of error. First, he contends the evidence is insufficient to support his convictions. He further asserts the trial court erred in failing to remove a juror for misconduct, and in admitting evidence of extraneous misconduct. For the reasons that follow, we affirm the trial court's judgments.

**ANALYSIS**

*Sufficiency of the Evidence*

Appellant's sufficiency challenge is premised on his contention that the evidence does not show he was the shooter. We review the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under this standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable

inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). In conducting a sufficiency review, we are required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012); *Brooks*, 323 S.W.3d at 899.

The first indictment charged appellant with intentionally, knowingly, and recklessly causing injury to Bianca by shooting her with a firearm. The second and third indictments charged appellant with intentionally and knowingly threatening Stella and Hector with imminent bodily injury while exhibiting a deadly weapon. Thus, to obtain appellant's conviction for aggravated assault against Hector and Stella, the State was required to prove that appellant intentionally or knowingly threatened Stella and Hector with imminent bodily injury and used or exhibited a deadly weapon. *See* TEX. PENAL CODE ANN. § 22.01(a)(2) (West 2011). To convict appellant of aggravated assault against Bianca, the State was required to prove that appellant intentionally, recklessly, or knowingly caused Bianca bodily injury while using or exhibiting a weapon. *See* TEX. PENAL CODE ANN. § 22.01(a)(1) (West 2011). Serious bodily injury is "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46).

At trial, Stella testified that she had been married to appellant for seven years, but shortly after they were married, he became violent and controlling. Stella separated from appellant, but he continued to get into her house. At the urging of her counselor, Stella obtained a protective order that prohibited appellant from communicating with Stella and her family members or coming to their residences or places of employment. The day after the protective order issued,

appellant pushed his way inside Stella's home and was subsequently arrested. The protective order had been in place for one month on the night of the shooting.

The day before the shooting, Stella and her family attended her grandfather's funeral. Appellant sent Stella a text message to find out the location of the funeral, but Stella ignored him. Appellant came to the funeral anyway, and held his arms out to Stella. Stella ignored him, and sat with her family. When appellant sent Stella a text message to offer his condolences, she responded by telling him to leave her alone.

After the funeral, Stella went to the home of her cousin, Debra Rodriguez. That evening, when appellant sent Stella a text message that said he was coming over, Stella did not reply. Because she was not at her own house, Stella assumed appellant did not know where she was. But at 3:00 a.m., Stella heard the doorbell ring. She opened the door slightly, and saw that it was appellant. Although appellant asked Stella to come outside, she refused and closed the door.

About thirty seconds later, Stella heard the sound of a gun cocking, and then glass breaking, as several gunshots were fired into the house. Stella thought perhaps one of her cousins was shooting in self-defense, so she opened the door again. When she did, she saw appellant shooting at her truck, which was parked underneath the streetlight. Stella described the bullets as coming "one after the other, and like short spans . . . They just kept coming." When appellant noticed Stella in the doorway, he started back toward the house. One of Stella's cousins yelled for her to shut the door. When she closed the door, she saw Aureya roll into the room, and then Victor. Debbie was in the hallway on the floor, and Hector and Bianca were in another room in the front. Everyone remained in place for a while until the bullets stopped. When the shooting finally stopped, Stella heard Hector yelling, "Bianca got hit."

On cross-examination, Stella admitted that she did not see the gun in appellant's hand. But she explained that she did not look at appellant's hands when she opened the door, and the door was only open for thirty seconds. Stella also described the position of appellant's hands as he shot at her truck, but could not state whether the gun was a pistol or a rifle.

Hector Campozano testified that after the funeral, he and his wife Bianca visited a club about a mile away from Debra's house to have a few drinks. As they were leaving the club at about midnight, they ran into appellant. Hector and appellant shook hands, but did not engage in any conversation. After leaving the club, Hector and Bianca returned to Debra's house and went to sleep.

At about 3:00 a.m., Hector heard a loud banging noise and smelled gunpowder. When he looked out of the window, he saw appellant running to his car. Hector checked on Bianca, and found her holding her face. He took her to the bathroom, and his mother called 911. Hector identified a photograph of his bedroom showing where a bullet hit the headboard of the bed in which he and Bianca were sleeping and another photograph showing where a bullet hit his ceiling fan.

Bianca testified that she and Hector ran into appellant at the club, and she mentioned this to Stella when they arrived home. Bianca was sleeping when the shooting started; a bullet entered her bedroom and struck her in the face. Initially, Bianca did not know that she had been shot. Hector had to awaken her because she is a heavy sleeper. When she awakened, Hector told her to go into the bathroom. There, she looked in the mirror, and saw that "half [her] face was coming off." After she looked into the mirror, she began to experience pain. Bianca was transported to the hospital and eventually had to undergo six surgeries. She lost her right eye, and now has a prosthetic eye.

5

Appellant fled the scene before the police arrived. Police recovered fourteen cartridge casings from a .223 caliber rifle, and determined that four shots had been fired into one of the bedrooms, one shot into another bedroom, and two shots into the front door. At least five more shots were fired into Stella's truck.

Appellant complains the evidence against him is speculative because Stella admitted she did not see him with a weapon when she opened the door, and could not be sure it was appellant firing the shots. But although Stella and the others did not actually see appellant shooting, the jury had other, ample evidence from which it could deduce that appellant was the shooter. After Stella closed the door on appellant, she heard a gun cock, and shots were fired into the house thirty seconds later. When Stella opened the door again, she saw appellant shooting a gun at her truck. The house and the truck were riddled with bullets, and appellant was the only person anyone saw outside the house. Although defense counsel cross-examined Stella about whether she saw a pistol or a rifle and Stella could not be sure, the fact that Stella did not see a gun in appellant's hand does not render the evidence insufficient. At best, this presented a conflict in the testimony to be resolved by the jury. Because our sufficiency standard gives full play to the responsibility of the trier of fact, as the sole judge of the weight and credibility of the evidence, to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the facts, we conclude the jury could have found beyond a reasonable doubt that appellant committed aggravated assault. *See Jackson*, 443 U.S. at 319. Appellant's first issue is overruled.

### *Jury Misconduct*

At the beginning of the punishment phase of trial, defense counsel informed the court that the defense team saw Stella talking to a juror in the parking lot, alleged juror misconduct, and

requested a hearing. In response, the court conducted a hearing at which two members of the defense team and Stella were called to testify. Counsel for the defense testified as follows:

> Well, we walked out of the courthouse, and on our way to the parking lot in the garage, they have some elevators there. Right where we got on the elevator, and the elevator on the way up stopped on the third floor parking level and the doors open, and what we saw was Estella telling two of the jurors, thank you, thank you, actually hugged one of them, and to -- at which point afterwards both of them just said, you're welcome, you're welcome, walked into the elevator and we proceeded upwards.

The legal assistant for the defense team also testified that she saw Stella with two jurors, and that Stella was hugging one of the jurors and saying "thank you for what you've done." On cross-examination, the assistant was asked to identify the juror, and she said, "It was a chunky one, and that was a big woman." The witness further stated, "I really couldn't see her face, but I saw that it was part of the juror." When the court asked how many jurors were involved, the witness replied "It was two. Standing outside." When the court asked the witness if she would recognize the two female jurors, she responded affirmatively.

When Stella was called to testify, she was asked if she had spoken to two jurors on the third floor of the parking lot, and she responded, "That's not true." She admitted that she had been talking to someone, but identified the person with whom she spoke as her counselor. After the testimony, the judge convened the jury and inquired collectively whether anyone had any contact with the individuals involved in the case. When nobody responded, the jury was removed.  In a subsequent off-the-record conference between counsel and the court, the defense team apparently identified juror Carol Smith as the offending party. Ms. Smith was then escorted into the courtroom. Before she arrived, the judge asked, "Are y'all positive that was her?" The defense team responded that they were sure. The judge also asked Stella if her counselor was present, and Stella responded that she was not. When juror Smith arrived, the judge told her ". . . there's some people here who feel certain that they saw [Stella] give you a hug yesterday and

thank you for your verdict yesterday afternoon." Juror Smith replied, "No, ma'am." After the juror had been excused, the court observed, "Well, she must look a lot like her." When the testimony concluded, defense counsel moved for a mistrial, and the trial court denied the motion. Counsel then requested that juror Smith be removed from the jury and the case proceed with eleven jurors. The court denied that request as well.

Later, the court allowed the defense an opportunity to develop further develop the testimony, and conducted a second hearing. During this time, the defense recalled Stella, who testified that she walked to the parking garage with her cousins Debbie and Hector, and her counselor Joan Doland. Stella described her counselor as 5'2" and 110 pounds. She recalled seeing defense counsel when the elevator doors opened, but adamantly denied she was conversing with any juror. She also specifically denied speaking with Juror Smith or the "red-headed" female juror. The three members of the defense team testified that they were certain juror Smith was speaking to Stella and they saw juror badges on both of the women. Although they could identify juror Smith, none of the defense team could identify the other juror. Lead counsel for the defense admitted that because he was concentrating on the case, he was not paying close attention to what he saw, and did not hear any of the conversation between the two women. At the conclusion of the second hearing, defense counsel re-urged the motion for a mistrial, or alternatively, the discharge of juror Smith. Again, the trial court denied both requests.

Appellant now complains the trial court erroneously refused to excuse Smith from the jury. Article 36.22, entitled "Conversing with jury," states, "No person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court." TEX. CODE CRIM. PROC. ANN. art. 36.22 (West 2005). The primary purpose of article 36.22 is to insulate jurors from outside influence. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). "A violation of article 36.22, once proven by the defendant, triggers a

8

rebuttable presumption of injury to the accused, and a mistrial may be warranted." *Id*. But "[b]ecause it is an extreme remedy, a mistrial should be granted only when residual prejudice remains after less drastic alternatives are explored." *Id*. at 884-85. Appellant has the burden of proving the allegation of juror misconduct. *Hughes v. State*, 24 S.W.3d 833, 842 (Tex. Crim. App. 2000).

On this record, we are not convinced the defense established a violation of Article 36.22. Appellant suggests that Stella and the juror did not testify truthfully, stating "since both the juror and the complaining witness were in contempt of court," the "only credible evidence offered" was that of defense counsel and his legal assistant. The record, however, contains no adjudication or finding of contempt, and we decline to indulge appellant's unsubstantiated assertion that the testimony was not truthful. Indeed, the trial court had a first-hand opportunity to assess the demeanor of all of the witnesses and determine their credibility. In so doing, the court apparently concluded that Stella and juror Smith testified truthfully. "Determinations of historical fact and assessment of witness credibility and believability are left almost entirely to the discretion of the trial judge, and where there is conflicting evidence there is no abuse of discretion if the motion is overruled." *Id*. Therefore, despite the conflicting testimony, we cannot conclude the trial court abused its discretion in denying appellant's request to remove juror Smith. Appellant's second issue is overruled.

***Extraneous Bad Act Evidence***

In his third issue, appellant argues the trial court erred in allowing evidence of extraneous misconduct during the punishment phase of trial in violation of TEX. R. EVID. 404 (b). The State responds that the issue has not been preserved for appellate review, or alternatively, that the evidence was not improperly admitted. We agree with the State.

On direct examination, Stella endeavored to explain why she remained in an abusive relationship for so long before seeking help. Stella stated that she thought controlling relationships were normal because she suffered abuse as a child. Defense counsel objected ". . . that's improper. Anything about her child abuse has nothing to do with this case." The trial court overruled the objection.

To preserve a complaint for review on appeal, a party must make a timely, specific request, objection, or motion to the trial court that states the grounds for the ruling sought, and the trial court must rule on the request, objection, or motion. TEX. R. APP. P.33.1(a); *Gutierrez v. State*, 36 S.W.3d 509, 510 (Tex. Crim. App. 2001). Furthermore, the complaint on appeal must comport with the trial objection. *See Swain v. State*, 181 S.W.3d 359, 367 (Tex. Crim. App. 2005).

Appellant's complaint on appeal is premised on rule of evidence 404(b), which bars the admission of "evidence of other crimes, wrongs, or acts to prove the character of a person in order to show conformity therewith." Appellant's trial objection, however, was not based upon rule 404(b). Because the trial objection does not comport with the issue raised on appeal, nothing has been preserved for our review. *See Swain,* 181 S.W.3d at 367.

But even if we deemed the trial objection sufficient to preserve the alleged error, appellant brought up the same subject matter on cross examination. Specifically, appellant's counsel asked Stella, "You mentioned earlier that you have been – that you were getting counseling for your child abuse; is that correct?" "When a court admits evidence over an objection, even in error, it is not reversible when the same evidence is subsequently admitted without objection." *Zarco v. State*, 210 S.W.3d 816, 833 (Tex. App.—Houston [14th Dist.] 2006,

no pet.); *see also Chamberlain v. State*, 998 S.W.2d 230, 235 (Tex. Crim. App. 1999) (harmless error if same evidence admitted without objection).[2] Appellant's third issue is overruled.

## CONCLUSION

Having resolved all of appellant's issues against him, we affirm the trial court's judgments.

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
111498F.U05

---

2. We are cognizant of the fact that a defendant does not waive the harmful effect of improperly admitted evidence when he seeks to meet, destroy, or explain such evidence. *See Edwards v. State,* 813 S.W.2d 572, 576 (Tex. App.— Dallas 1991, pet. ref'd n.r.e.). However, nothing in the record suggests, and appellant does not assert he was attempting to "meet, destroy or explain" the complained-of evidence when he incorporated it into his cross-examination.



# Court of Appeals
# Fifth District of Texas at Dallas

**JUDGMENT**

JOSEPH GEORGE BUCKALOO, JR, Appellant

No. 05-11-01498-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 363rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F10-53490-W.
Opinion delivered by Justice FitzGerald.
Justices Fillmore and Richter participating.

     Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered February 12, 2013.

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BUCKALOO, JR., JOSEPH GEORGE, Appellant

No. 05-11-01499-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 363rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F10-71666-W.
Opinion delivered by Justice FitzGerald.
Justices Fillmore and Richter participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered February 12, 2013.

/Kerry P. FitzGerald/

KERRY P. FITZGERALD
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BUCKALOO JR., JOSEPH GEORGE, Appellant

No. 05-11-01500-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 363rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F10-71667-W.
Opinion delivered by Justice FitzGerald.
Justices Fillmore and Richter participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered February 12, 2013.

/Kerry P. FitzGerald/

KERRY P. FITZGERALD
JUSTICE