

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| ARACELI NAVA,<br>A/K/A ARACELI MARRUFO-NAVA,<br><br>Appellant,<br><br>V.<br><br>THE STATE OF TEXAS,<br><br>Appellee. | §<br>§<br>§<br>§<br>§<br>§<br>§ | No. 08-14-00226-CR<br><br>Appeal from the<br><br>346th District Court<br><br>of El Paso County, Texas<br><br>(TC# 20140D01257) |

## O P I N I O N

Araceli Nava, Appellant, was convicted of manslaughter with a deadly weapon finding and sentenced to ten years imprisonment. On appeal, Appellant asserts the trial court erred by denying her motions for mistrial and alleges she was egregiously harmed by jury charge error.

### FACTUAL AND PROCEDURAL BACKGROUND

On August 29, 2009, around 10:00 a.m., Appellant was on her way home, hit and killed a bicyclist, Gustavo Vega. Appellant called 911and told the dispatcher she had struck someone with her vehicle. Appellant explained that she had gotten lost and was looking at her cell phone when she ran over Vega. In the recorded 911 call, Appellant stated, "I was drinking earlier, and right now, I'm…I was falling asleep at the wheel. I didn't know where I was, so I was trying to find my …my sister's number."

The responding paramedic, while assessing Appellant, asked what had happened. Appellant stated she had gone to a "kickback" after work and got lost on her way home. She had been attempting to read her phone and call for directions when she heard a thump and saw that she had hit someone.

Appellant told the responding deputy sheriff's officer, Leon, she had been driving and was falling asleep when she hit Vega. Smelling alcohol emanating from Appellant, Deputy Leon recorded his conversation with her at the scene. In the video recording, Appellant told the deputy that she had gone to a "kickback" after work, had gotten lost, fell asleep at the wheel and hit Vega. Appellant admitted she had been drinking, but her last drink was at 6:00 a.m. When queried as to what she had been drinking, Appellant initially replied four shots and then corrected her answer to five shots. She listed them as follows: a Budweiser Select beer; a Budweiser beer; 2 Jager bombs; a Jungle Juice; 2 shots of Jack Daniels; a Jungle Juice, or Jello shot, or Double shot.

Appellant's blood-alcohol concentration was .099 and .101. Further, Appellant was found to be travelling in the opposite direction from her home. Deputy Leon testified that her geographical cluelessness was evidence of mental impairment. There was no indication Appellant applied her brakes before striking Vega.

Appellant was indicted for one count of intoxicated manslaughter and second count of manslaughter. The jury convicted her of manslaughter with a finding of a deadly weapon. Appellant was sentenced to imprisonment for 10 years and a fine of $10,000.

**DISCUSSION**

2

Appellant brings four issues. Issues One and Two turn on jury deliberations. She alleges the trial court erred by denying her motions for mistrial when the jury sent out two notes. Issues Three and Four alleges error in the jury charge.

**Motions for Mistrial**

We review a trial court's ruling on a motion for a mistrial for an abuse of discretion, viewing the record in the light most favorable to the trial court's ruling and upholding that ruling if it was within the zone of reasonable disagreement. *Webb v. State*, 232 S.W.3d 109, 112 (Tex.Crim.App. 2007); *Ladd v. State,* 3 S.W.3d 547, 567 (Tex.Crim.App. 1999). A mistrial is an appropriate remedy in "extreme circumstances" for a narrow class of highly prejudicial and incurable errors. *Ocon v. State,* 284 S.W.3d 880, 884 (Tex.Crim.App. 2009); *see also Mendoza v. State*, No. 08-13-00293-CR, 2015 WL 5999596, at *5 (Tex.App.--El Paso Oct. 14, 2015, pet. ref'd)(not designated for publication). A trial court abuses its discretion in denying a motion for a mistrial only when no reasonable view of the record could support the court's ruling. *Webb*, 232 S.W.3d at 112. The decision to remove or retain a juror lies within the discretion of the trial court. *Uranga v. State*, 330 S.W.3d 301, 307 (Tex.Crim.App. 2010). When reviewing a trial court's decision regarding potential juror misconduct, an appellate court should defer to the trial court's resolution of the historical facts and its determinations concerning credibility and demeanor. *Quinn v. State*, 958 S.W.2d 395, 401 (Tex.Crim.App. 1997). Whether an error requires a mistrial must be determined by the particular facts of the case. *Ladd,* 3 S.W.3d at 567. The movant has the burden of proving the allegation of juror misconduct. *Hughes v. State,* 24 S.W.3d 833, 842 (Tex.Crim.App. 2000).

The Court of Criminal Appeals in *Ocon* noted "while questioning jurors about allegations of misconduct is a helpful tool for measuring the necessity for a mistrial, it is not required. Our

case law does not establish juror questioning as a mandatory remedy, nor do the Texas Rules of Evidence." *Ocon*, 284 S.W.3d at 886; *see also Granados v. State,* 85 S.W.3d 217, 236 (Tex.Crim.App. 2002)(providing that questioning jurors about allegations of misconduct is permitted but not required). Further, when considering a motion for mistrial, "if jurors are questioned, it should be at the behest of the movant. Precedent on this issue . . . establishes that it is incumbent upon the party moving for a mistrial to request an inquiry of the jurors." *Ocon,* 284 S.W.3d at 886; *see also Hughes v. State,* 24 S.W.3d 833, 842 (Tex.Crim.App. 2000)("[A]ppellant has the burden of proving the allegation of juror misconduct."). The *Ocon* Court also held requiring the party who alleges juror misconduct to initiate juror questioning—a "less drastic remedy than a mistrial"—is consistent with general rules of error preservation. *Ocon*, 284 S.W.3d at 886. The Court of Criminal Appeals stated, "[a]n appellant who moves for a mistrial without first requesting a less drastic alternative forfeits appellate review of that class of events that could have been cured by the lesser remedy." *Id.* at 886–87. Ocon's "first action" in response to the alleged misconduct was to move for a mistrial, therefore, the Court held it would not reverse the trial court's judgment if "a lesser, un-requested alternative, such as juror questioning, could have cured the problem ." *Id.* at 887.

"[W]here a sitting juror makes statements outside of deliberations that indicate bias or partiality, such bias can constitute jury misconduct that prohibits the accused from receiving a fair and impartial trial." *Granados*, 85 S.W.3d at 235. "To preserve error caused by juror misconduct, the defendant must either move for a mistrial or file a motion for new trial supported by affidavits of a juror or other person in a position to know the facts alleging misconduct." *Castillo v. State*, 319 S.W.3d 966, 970 (Tex.App.--Austin 2010, pet. ref'd); *see also McIntire v.*

4

*State*, 698 S.W.2d 652, 658 (Tex.Crim.App. 1985)(alleged juror misconduct is based on facts outside record, facts "must be supported by the affidavit of a juror or some other person who was in a position to know the facts, or must state some reason or excuse for failing to produce the affidavits.")[Internal quotation marks and citation omitted]. Appellants bear the burden of "proving the allegation of juror misconduct." *Hughes*, 24 S.W.3d at 842.

### Punishment Deliberation

During deliberations on punishment, the jury sent out several notes. The first note stated, "[i]f a juror cannot consider the full 'range of punishment,' what are our options? He is not being impartial due to his personal feelings." In response, the trial court submitted an *Allen* charge to the jury.

Defense counsel stated they had no objection to the *Allen* charge. The State likewise voiced no objection. However, the State opined the note suggested that "some or the majority" of the jurors feel an individual juror may be deliberating "improper[ly]." The prosecutor also pointed out that without further inquiry it is not clear whether the unnamed juror was refusing to consider the full range of punishment or merely voicing an opinion during punishment deliberations after hearing all the punishment evidence.

Appellant moved for mistrial, which was denied. The trial court explained her decision stating "we don't know at this point in time what those personal feelings are . . . ." Further, the trial court told the parties the *Allen* charge would remind the jury of their oath to follow the law, instruct them to refer to and follow the law set forth in the court's charge.

Later that day, the jury sent out another note indicating that Juror No. 3 wished to be excused. The trial court then proposed an instruction to the jury that stated "the law does not

5

allow any juror to be excused at this time. Please continue your deliberations in an effort to arrive at your unanimous verdict." Appellant moved for a mistrial noting:

> At this time, Your Honor, the Defense moves for a mistrial, again, on the grounds that it looks like we have – again, the one guess is that that was the same juror that was holding out in the beginning.
> But it seems like at this point, I wouldn't want this juror to feel coerced or any duress. And the juror needs to be excused at this time.

The State responded that Juror No. 3 had failed to provide any reason for the necessity of punishment deliberations without him. The trial court agreed with the State that it was speculation as to why Juror No. 3 needed to be excused and submitted her proposed response to the jury. Approximately two hours later, the jury reached a verdict as to Appellant's sentence.

### Analysis

Appellant argues the first jury note "unequivocally" demonstrates the unnamed juror could not be impartial or consider the full range of punishment. Appellant asserts that the unnamed juror "clearly" lacked the ability to be impartial. Appellant reasons the unnamed juror's lack of impartiality constituted jury misconduct because he or she failed to disclose this material information during voir dire.

We disagree. The question of whether the unnamed juror could, in-fact, consider the full range of punishment or whether his purported lack of impartiality actually constituted bias or prejudice was never explored or litigated. Defense counsel did not request any type of questioning or hearing to ascertain the unnamed juror's issue regarding the full range of punishment and alleged lack of impartiality. Appellant has failed to carry her burden that shows any jury misconduct occurred.

6

We find the record does not support the granting of a mistrial based on juror misconduct and the trial court did not abuse its discretion. Issue One is overruled.

Regarding the second jury note, Appellant asserts that read against the context of the first note indicates a juror "was not following the law." Further, she alleges that "despite the appearance of duress and coercion, the trial court never inquired as to the nature of the juror's problem." She also states, "that juror number 3 had indicated concern with the full range of punishment during voir dire." Appellant concludes that Juror No. 3's issues with punishment in voir dire, the first note and ultimately the second note points to Juror No. 3 "acting contrary to the other juror's wishes . . . [and] being subject to duress and coercion." Lastly, Appellant argues the trial court erred in denying her motion for new trial when it was "clear" Juror No. 3 "was compromised to the point that he no longer wished to be subjected to whatever was occurring in the jury room."

We are not persuaded. Regardless of whether Juror No. 3's request to be excused is viewed against the backdrop of the initial jury note or not, Appellant failed to carry her burden to show that juror misconduct occurred. Trial counsel admitted that his "guess" was that Juror No. 3 was the juror referenced in the first note which prompted his speculation that Juror No. 3 was suffering from duress and coercion. Appellant failed to request or direct the court to conduct a hearing regarding the alleged juror misconduct. Appellant bore the burden to request the trial court question the jurors and proving the allegation.

We find the record does not support the granting of a mistrial based on juror misconduct and the trial court did not abuse its discretion. Issue Two is overruled.

**Charge Error**

7

Appellant admits that she did not object to the court's charge or request any instructions. On appeal, she raises two issues complaining about the court's jury charge. She asserts that the trial court erred (1) by incorrectly instructing the jury on the burden of proof of the deadly weapon finding which placed an improper burden on the defense; and (2) by including two manner and means of recklessness that was not supported by the evidence.

## Standard of Review

Alleged jury charge error is reviewed in two steps: first, determine whether error exists; if so, then evaluate whether sufficient harm resulted from the error to require reversal. *Price v. State,* 457 S.W.3d 437, 440 (Tex.Crim.App. 2015); *Ngo v. State,* 175 S.W.3d 738, 743–44 (Tex.Crim.App. 2005). The degree of harm required for reversal depends on whether the jury charge error was preserved in the trial court. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App. 1984)(op. on reh'g). If the jury charge error has been properly preserved by an objection or request for instruction, reversal is required if the appellant has suffered "some harm" from the error. *Vega v. State,* 394 S.W.3d 514, 519 (Tex.Crim.App. 2013); *Almanza,* 686 S.W.2d at 171; *see Barrios v. State,* 283 S.W.3d 348, 350 (Tex.Crim.App. 2009)("If there was error and appellant objected to the error at trial, reversal is required if the error 'is calculated to injure the rights of the defendant,' which we have defined to mean that there is 'some harm.'"). When the charge error was not properly preserved by an objection or request for instruction, the error must be "fundamental" and requires reversal only if it was "so egregious and created such harm that the defendant was deprived of a fair and impartial trial." *Villarreal v. State,* 453 S.W.3d 429, 433 (Tex.Crim.App. 2015); *Almanza,* 686 S.W.2d at 171.

Reversal is required only if the errors resulted in egregious harm. *See State v. Ambrose,*

8

487 S.W.3d 587, 595 (Tex.Crim.App. 2016)(reaffirming that under precedent of Court of Criminal Appeals "unpreserved jury-charge error does not require a new trial . . . unless the error causes 'egregious harm'"); *Garrett v. State,* 220 S.W.3d 926, 932 (Tex.Crim.App. 2007)(noting that mandatory-presumption errors in jury charge are subject to harmless-error review, and approving appellate court's analysis regarding egregious harm). Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Marshall v. State,* 479 S.W.3d 840, 843 (Tex.Crim.App. 2016); *Arrington v. State,* 451 S.W.3d 834, 840 (Tex.Crim.App. 2015). "Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'" *Villarreal,* 453 S.W.3d at 433 (quoting *Reeves v. State,* 420 S.W.3d 812, 816 (Tex.Crim.App. 2013)); *see Nava v. State,* 415 S.W.3d 289, 298 (Tex.Crim.App. 2013)("[Egregious harm] is a difficult standard to meet and requires a showing that the defendants were deprived of a fair and impartial trial."). We will not reverse a conviction unless the defendant has suffered "actual rather than theoretical harm." *Villarreal,* 453 S.W.3d at 433; *see Marshall,* 479 S.W.3d at 843 ("[C]ourts are required to examine the relevant portions of the *entire* record to determine whether appellant suffered actual harm, as opposed to theoretical harm, as a result of the error.")[Emphasis in orig.]; *Cosio v. State,* 353 S.W.3d 766, 777 (Tex.Crim.App. 2011)("An egregious harm determination must be based on a finding of actual rather than theoretical harm."). In examining the record to determine whether charge error has resulted in egregious harm, we consider (1) the entirety of the jury charge, (2) the state of the evidence, including the contested issues and weight of probative evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the trial record as a whole. *Villarreal,* 453 S.W.3d at 433; *Almanza,* 686 S.W.2d at 171.

9

For a trial court to enter a deadly-weapon finding in the judgment, the trier of fact was required to first make an "affirmative finding" to that effect. TEX.CODE CRIM.PROC.ANN. art. 42A.054(c)(West 2018). "The entry of a deadly weapon in a judgment not only curtails a trial court's ability to order community supervision, it also affects a defendant's eligibility for parole." *Duran v. State,* 492 S.W.3d 741, 745 (Tex.Crim.App. 2016).

The Texas Penal Code defines "'[d]eadly weapon,'" in relevant part, as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX.PENAL CODE ANN. § 1.07(a)(17)(B)(West Supp. 2017). "In order to sustain a deadly-weapon finding, the evidence must demonstrate that: 1) the object meets the definition of a deadly weapon; 2) the deadly weapon was used or exhibited during the transaction on which the felony conviction was based; and 3) other people were put in actual danger." *Brister v. State*, 449 S.W.3d 490, 494 (Tex.Crim.App. 2014). Further, "[o]bjects that are not usually considered dangerous weapons may become so, depending on the manner in which they are used during the commission of an offense," and a "motor vehicle may become a deadly weapon if the manner of its use is capable of causing death or serious bodily injury." *Drichas v. State*, 175 S.W.3d 795, 798 (Tex.Crim.App. 2005).

To support a deadly weapon finding under Section 1.07(a)(17)(B), the State need not establish that the use or intended use of an implement actually *caused* death or serious bodily injury; only that "the manner" in which it was either used or intended to be used was "*capable*" of causing death or serious bodily injury. [Emphasis added]. *Moore v. State*, 520 S.W.3d 906, 908 (Tex.Crim.App. 2017)(citing *Tucker v. State*, 274 S.W.3d 688, 691 (Tex.Crim.App. 2008)). Nor does the plain language of the provision require that the actor actually intend death or serious

10

bodily injury. *Id.* Determining whether a weapon is deadly in its manner of use or intended use, however, depends on the particular facts of each case, and no one factor is determinative. *See id.*

**The Charge**

In Issue Three, Appellant points to the following as the basis of her first complaint with the court's charge:

> [N]ext consider if you find from the evidence **beyond a reasonable doubt that the Defendant did or did not** then and there use or exhibit a deadly weapon, to wit: a motor vehicle, that in the manner of its use or intended use was capable of causing death or serious bodily injury . . . . [Emphasis added].

Appellant asserts that the trial court's instruction to the jury that "if you find from the evidence *beyond a reasonable doubt that the Defendant did or did not* then and there use or exhibit a deadly weapon . . ." placed the burden of beyond a reasonable doubt upon Appellant in order for the jury to find against a deadly weapon finding. [Emphasis added]. The State responds assuming *arguendo* there was jury-charge error, Appellant cannot show egregious harm.

Appellant readily admits that she did not object to the burden of proof language in the jury charge, and thus, if there is error, she must show egregious harm for relief. Appellant argues that there was "scant" evidence that Appellant drove the vehicle in a reckless manner. She asserts the record reveals a lack of probative evidence to support the jury's finding that she used the vehicle as a deadly weapon.

In this case, assuming without deciding the jury charge was erroneous, we apply the egregious harm standard because the alleged error was un-objected to. *Ambrose,* 487 S.W.3d 594-95. In so doing, we review the entire record for actual harm that "affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory."

11

*Marshall,* 479 S.W.3d at 843; *Cosio,* 353 S.W.3d at 777.   We are further instructed to consider (1) the entirety of the jury charge, (2) the state of the evidence, including the contested issues and weight of probative evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the trial record as a whole.   *Villarreal,* 453 S.W.3d at 433; *Almanza,* 686 S.W.2d at 171.

The jury charge instructed the jury that "[a]ll persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt."   Further, the jury was told "[t]he law does not require a Defendant to prove his innocence or produce any evidence at all.   The presumption of innocence alone is sufficient to acquit the Defendant, unless the jurors are satisfied beyond a reasonable doubt of the Defendant's guilt after careful and impartial consideration of all the evidence . . . ."   The Verdict Form C stated:

> We, the Jury also find beyond a reasonable doubt that the Defendant, ARACELI NAVA aka ARACELI MARRUFO-NAVA, **DID** use or exhibited a deadly weapon, to wit; a motor vehicle, that in the manner of its use or intended use was capable of causing death or serious bodily injury during the commission of the offense.   [Emphasis in orig.].
>
> [Signed by Juror Voeks]
> PRESIDING JUROR

Defense counsel in closing argument stated:

> [T]hat poor man died, okay? And she was driving the vehicle that caused his death. There is no dispute about that, folks.
>
> .          .          .
>
> And I will tell you this: Even though the Court tells you you have to be unanimous in your verdict, you don't have to be unanimous in thinking, Well was it the cell phone or was she sleepy?

12

Also, you don't have to agree. Just one of those things, anyone of those things, and all 12 of you think that maybe that's it, well, then you find her guilty of manslaughter, because, folks, that's what the evidence shows you. She's guilty of manslaughter.

.          .          .

What makes it criminal is, she was reckless--in my belief--that she was reckless in not stopping or getting some sleep or doing whatever.

.          .          .

[B]ecause she was reckless.

.          .          .

You make the decision if it was a deadly weapon. In the manner of its use while driving down the road, and I see somebody I don't like, I'm going to try to scare him. So I pull over and I try to scare him, and I hit him and kill. [sic] Well, in the manner of the use was as a deadly weapon.

And the other definition says for intended use. I am going to kill that person with my car.

Is that what they proved beyond a reasonable doubt to you in this instance? Because, see, if that's the case, why does the jury ever have to pass upon whether or not this is a deadly weapon? I mean, if my pinkie -- like I told you in voir dire -- if my pinkie is used, and I kill somebody with it, no matter what the circumstances are, you don't even have to decide it anymore, folks, this is a deadly weapon because it caused the death.

.          .          .

There is a standard there that you have to pass upon as to whether or not they proved it beyond a reasonable doubt, okay?

Likewise, in voir dire, Appellant, the State along with the trial court elaborated on the presumption

of innocence; the State's burden of proving all elements beyond a reasonable doubt; the definition

of beyond a reasonable doubt; and the jury's duty to acquit the defendant if the State did not meet their burden.

The evidence was uncontroverted that Appellant's vehicle hit and killed Vega. Appellant was driving the vehicle. Appellant admitted at the scene that she was, in the alternative, falling asleep or asleep at wheel, reading her cell phone and calling her sister. Clearly, the evidence proved that the manner of the use of the motor vehicle, that is, recklessly, was capable of causing death or serious bodily injury. Driving a vehicle while asleep or falling asleep, reading a cell phone or calling someone is using a motor vehicle in a manner that is capable of killing or causing serious bodily injury. Further, Appellant freely admitted she had been drinking the night before, regardless whether she was legally intoxicated or not, the jury reasonably could have considered alcohol a factor in finding she drove recklessly.

We find, after examining the record, Appellant did not suffer egregious harm. We overrule Appellant's third issue.

In Issue Four, the basis of Appellant's second complaint with the charge is as follows:

> [D]id then and there recklessly cause the death of an individual, namely, Gustavo Vega, by committing one or more of the following acts: **by operating a motor vehicle after having consumed alcohol**, and/or by using a phone while driving, and/or by failing to maintain a proper lookout while driving, **and/or by failing to maintain control of the motor vehicle she was driving**, and/or by continuing to operate a motor vehicle after feeling sleepy, thereby causing said motor vehicle to collide with a bicycle ridden by Gustavo Vega . . . . [Emphasis added].

Appellant argues that "operating a motor vehicle after having consumed alcohol" and "failing to maintain control of the vehicle she was driving" are unsupported by the evidence. Appellant

14

relies on *Sanchez v. State* to support her contention that the trial court's charge was erroneous. 376 S.W.3d 767 (Tex.Crim.App. 2012).

In *Sanchez v. State,* the Court of Criminal Appeals, found the jury instructions were erroneous in their inclusion of multiple manner-and-means theories that was unsupported by the evidence. *Sanchez*, 376 S.W.3d at 774. *Sanchez* involved an indictment that alleged a "manner and means unknown," but evidence adduced at trial narrowed the range of causation theories of the complainant's death. *Id.* at 770.

Here, Appellant contends the evidence is insufficient to support she recklessly caused the death of Vega by operating a motor vehicle either (1) after having consumed alcohol and (2) failing to maintain control of the vehicle she was driving. Appellant admitted at the scene that she had consumed alcohol the night before hitting Vega. She smelled of alcohol. She admitted to Deputy Leon she had stopped drinking four hours before and had consumed six shots and two beers. Appellant's blood-test results revealed a blood alcohol of .099 and .101 two hours after hitting Vega. Appellant admitted she fell asleep, was falling asleep, or looking at her cell phone when she collided with Vega. Further there was no evidence that she ever applied her brakes. This evidence supports the trial court's inclusion of the alternate manner and means of Appellant's driving recklessly after imbibing alcohol and failing to maintain control of her vehicle.

We find no jury charge error. Appellant's fourth issue is overruled.

## CONCLUSION

Having overruled all four of Appellant's issues, we affirm.

June 27, 2018

YVONNE T. RODRIGUEZ, Justice

15

Before McClure, C.J., Rodriguez, and Hughes, JJ.
Hughes, J., Not Participating

(Do Not Publish)